# UNITED STATES BANKRUPTCY COURT
# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| JODY L. KEENER, ) | |
| ) | Bankruptcy No. 14-01169 |
| Debtor. ) | |

## MEMORANDUM AND ORDER RE:
## OBJECTION TO HOMESTEAD EXEMPTION

Super Wings International, Ltd ("Super Wings") brought this objection to Debtor's homestead exemption claim. The Court held an evidentiary hearing on the matter in Cedar Rapids, Iowa on November 19, 2014. Jeff Goetz and Krystal Mikkilineni appeared on Debtor's behalf. Joseph Peiffer and Abram Carls appeared on Super Wings' behalf. The Court took the matter under advisement. This is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

## STATEMENT OF THE CASE

Super Wings objects to Debtor's claim of a homestead exemption. Super Wings believes that the debt Debtor owes to Super Wings precedes Debtor's acquisition of his homestead. Super Wings also argued that the size of the homestead Debtor has claimed exceeds that allowed by law.

Debtor argues he was using the property as his homestead before he incurred the debt owed to Super Wings. Debtor argues, at a minimum, that he was in "constructive occupancy" of the homestead before he incurred the Super Wings'

debt. Debtor also states that he will agree to re-plat the homestead in order to comply with the homestead size limitations of Iowa Code § 561.2.

The Court sustains Super Wings' objection. Debtor used the property as his homestead only after incurring the debt to Super Wings. The property is not an exempt homestead against Super Wings' debt. The Court also finds Debtor's claim of constructive occupancy fails on the facts before the Court.

## STATEMENT OF FACTS

These proceedings began on July 30, 2013, when three creditors filed an involuntary Chapter 7 petition against Keener. On July 28, 2014, while the involuntary petition was still pending, Debtor filed a voluntary Chapter 11 bankruptcy. The case continues in the voluntary proceeding while further decisions in the involuntary proceeding are held in abeyance.

There is no dispute Debtor incurred the debt to Super Wings on December 30, 2008. He signed a promissory note with Super Wings agreeing to a debt in the principle amount of $2 million at a 5% interest rate. Debtor made the first six "interest-only" payments under the note, but then stopped making payments. Super Wings obtained a judgment for the debt on January 25, 2015 in the United States District Court for the Northern District of Iowa.

The real property Debtor claims as his homestead is located at 4012 Paradise Court Northwest in Cedar Rapids, Iowa (the "Property"). Debtor acquired the

Property, a vacant lot, by Warranty Deed on July 20, 2000. He did not begin building on the Property until sometime in 2007.

Debtor testified at the hearing that he lived on the Property "on-and-off" during 2007. Debtor testified at the § 341 meeting that he did not move into the Property permanently until 2013. Debtor noted that he "lived" at the Property for short periods. He claims that in addition to the Property, he stayed at a Cedar Rapids apartment and another property he owned in California on a rotating basis before 2013.

Debtor claims he lived at the Property on and off before he moved in—and on and off before he incurred the debt to Super Wings. He claims he had a bed in the pool area and occasionally slept there. He also claims the guest house area was finished before the full house. He thinks the guest house was finished and livable sometime in 2007. He thinks he used it some "after the flood"—which occurred in summer 2008.

Debtor admitted that he stayed at his home in Monterey, California about "40% of the time." He also admits he traveled a lot, but stayed at the Cedar Rapids apartment quite a bit as well. His testimony about the amount of time he spent at the Property was vague. He did specifically testify that after his CFO, George Vincent, passed away in 2013, he decided he needed to "move back" to Cedar Rapids.

3

Debtor has paid the property taxes since 2006. Debtor has listed the Property as his place of residence on his car registration information since 2004. Debtor did not use the Property as his address for personal taxes. Instead, Debtor used 1411 Edgewood Rd NW #5, Cedar Rapids, Iowa 52405 as his home address on his tax returns from 2005 to 2008. Debtor uses a P.O. Box to receive personal mail. Debtor claims he attempted to put up a mailbox at the Property, but admits he does not regularly receive mail at this address. His P.O. Box is also associated with one of his businesses. Debtor's testimony was confusing and contradictory. The Court does not find the Debtor's testimony to be credible.

Super Wings called Eric Reese as a witness at the evidentiary hearing. Mr. Reese is a master plumber and United States Navy veteran. He is a disinterested third party. Mr. Reese stated that he was the main, and occasionally sole, plumber involved in installing rough-in plumbing at the Property.

Mr. Reese worked at the Property daily. He worked there during periods when Debtor claimed he "lived" there periodically. Mr. Reese saw no evidence that anyone was living on the Property during the construction period. Mr. Reese specifically recalled that there was no hot water or gas heat available on the Property even when he concluded work on February 9, 2009.

Mr. Reese also specifically recalled that Debtor asked him to do some work at a warehouse off of Wiley Boulevard in Cedar Rapids. This occurred during the

4

time Mr. Reese was working on the Property.  Mr. Reese testified that it appeared that Debtor was actually living in a section of this warehouse, not at the Property.  The Court finds Mr. Reese's testimony to be extremely credible.

## DISCUSSION

Debtor claims the Property is protected by his homestead exemption.  Super Wings argues that Debtor cannot claim the homestead exemption applies against its debt because the debt was incurred before Debtor acquired his homestead rights.  While that is the issue before the Court, there is one preliminary matter that Debtor raised that must be addressed.

### I. Debtor Claims Super Wings violated Local Rule 9014(c)(3) regarding initial disclosures.

Debtor objected to Super Wings' failure to comply with Local Rule 9014(c)(2) with regard to the testimony of Mr. Reese.  This Local Rule applies in all contested matters and incorporates the Federal Rule of Civil Procedure 26(a)(3).  Rule 26(a)(3) requires certain pretrial disclosures, including the name, address, and telephone number for each witness.  Such information should be exchanged at the time that exhibits are exchanged under Local Rule 9070-1.  Local Rule 9014-1(c)(2).

Debtor objected to the testimony of Mr. Reese because proper disclosure was not made.  The Court overruled the objection and determined at trial that it would hear from all witnesses because of the fact intensive nature of this inquiry.

5

The Court can waive its own local rules where there is good cause to do so. <u>Mesta Machine Co. v. Mellon Bank, N.A.</u> (<u>In re Mesta Machine Co.</u>), 30 B.R. 178, 181 (W.D. Pa. 1983). The Court reaffirms that ruling here.

### II. Debtor acquired his homestead after he incurred the debt to Super Wings.

Debtor first argues that he acquired his homestead rights in the Property before he incurred the debt to Super Wings. He claims that he lived at the Property during construction. Super Wings argues that Debtor did not live at the Property during construction and did not use it as his homestead during construction. Therefore, Super Wings argues Debtor cannot apply the homestead exemption to the debt he owes to Super Wings.

"The issues in this case arise under, and at the intersection of, the exemption provisions of federal bankruptcy law and Iowa law." <u>In re Roberts</u>, 443 B.R. 531, 536 (Bankr. N.D. Iowa 2010), <u>aff'd</u> 450 B.R. 159 (N.D. Iowa 2011). Debtor has federal exemption rights under 11 U.S.C. § 522. Nonetheless, states can opt out of these federal exemptions and use state-specific exemptions. 11 U.S.C. § 522(b) (2013). Iowa opts out of the federally scheduled exemptions and uses its own property exemptions instead. Iowa Code § 624.10 (2014). Iowa allows a homestead exemption for a home that meets certain qualifications. <u>Id.</u> § 561.16. "The party objecting to a homestead exemption has the burden to prove the exemption is not properly claimed." <u>In re Gerholdt</u>, Bankr. No. 11-01321, 2011

WL 4352353, at *1 (Bankr. N.D. Iowa Sept. 16, 2011); In re Roberts, 443 B.R. at 537; see also Fed. R. Bankr. P. 4004.

One of the exceptions to the homestead exemption is where the debtor incurred the debt to a creditor before acquiring the homestead. Iowa Code § 561.21(1) ("The homestead may be sold to satisfy debts [that are] contracted prior to its acquisition, but then only to satisfy a deficiency remaining after exhausting the other property of the debtor, liable to execution."); see also Fed. Land Bank of Omaha v. Ellingson (In re Ellingson), 82 B.R. 88, 89 (N.D. Iowa 1986). An early Iowa court decision explains:

> The judgment obtained on an indebtedness, contracted prior to the acquisition of a homestead, becomes a lien on all real estate owned by the debtor at the time of its rendition. It becomes a lien on the homestead only, because the debt was contracted prior to the acquisition of the homestead. The lien is no different except the limitation of its enforcement, to wit, after all other property has been exhausted. This statute, making a homestead liable for debts contracted prior to its acquisition, has the effect of relieving it from its exemption as such, and that thereafter, as to debts contracted prior to that time, it stands as all other real estate, and may be sold on general execution.

James v. Weisman, 143 N.W. 428, 429 (Iowa 1913); see also Patrick B. Bauer, Iowa's Homestead Exemption: Three Decades of Bankruptcy Court Application and Development (Fortieth Annual Barbra A. Everly Advanced Procedures Bankruptcy Seminar 2010).

The Iowa homestead exemption requires: "[t]he homestead must embrace the house **used as a home** by the owner." Iowa Code §561.1(1) (2014) (emphasis added). An exemption generally requires "use of real property not just mere ownership or maintenance." In re Feliciano, 487 B.R. 47, 51 (Bankr. D. Mass. 2013). Where a debtor is attempting to claim a homestead exemption, the debtor should not only have the intention of making that residence his or her permanent home, the debtor should also engage in overt acts that express that intention. Id. at 52. "If a residence is uninhabitable it cannot be 'used' for the purpose of qualifying for the federal exemption." Id. As noted, language requiring "use" appears in the Iowa homestead exemption. Iowa Code § 561.1(1).

The Court here finds that Debtor was not using the house under construction as a home before he incurred the debt to Super Wings on December 30, 2008. Debtor admits he had no certificate of occupancy at the time. He thus had no right to live there. Debtor's testimony that he did live there at times is not credible and is contradicted by other credible testimony. Neither the gas nor the hot water was available at the Property until after February 2009. It would be difficult to find that anyone was living in an under-construction home with no hot water and no gas for heat in early spring in Iowa. Mr. Reese, a master plumber who was on the Property regularly, did not see evidence that anyone was living on the Property before the hookups were complete. Without these necessities, the home simply

could not be "used" by the owners as required for the exemption. The Court finds Debtor did not move into the home or "use" it as a home until after incurring the debt owed to Super Wings. Therefore, the home cannot be exempt against Super Wings' debt.

### III. The Constructive Occupancy theory is not available to Debtor here.

Debtor argues that even if he did not live in the home on a permanent basis before he incurred the debt to Super Wings, the Court should find that the homestead exemption applies in this case based on a "constructive occupancy" theory. Super Wings argues that a constructive occupancy theory cannot be applied because the Iowa Code and Iowa courts have specifically rejected it.

The Iowa Code appears to require the actual "use" of the house as a home to qualify as a homestead. Iowa Code § 561.1. This section's language has been in place for at least 150 years. Compare Charless & Blow v. Lamberson, 1 Iowa 435, 435–36 (1855) (citing the Code's language as "the house used as a home"), with Iowa Code § 561.1 ("The homestead must embrace **the house used as a home** . . . ." (emphasis added)). The Iowa courts have interpreted this phrase to mean that the house must be used "as a *home*—a place to abide—a place for the family; and when thus used and occupied, it becomes the homestead, and not before." Charless & Blow, 1 Iowa at 435–36 (emphasis in original). While Charless & Blow is an extremely old case, Iowa courts have cited to it and have not chosen to

9

overrule it. In re Estate of Timm, No. 12-1212, 837 N.W.2d 679, at *5 (Iowa Ct. App. 2013) ("Regardless of whether constructive occupancy is sufficient under section 561.1, in our de novo review we find Cory's actual occupancy of the house in Boone met the test."). It is not this Court's place to step in to change Iowa law.

Debtor asks the Court to instead apply constructive occupancy cases that do not involve Iowa law. "For purposes of § 522(d)(1), constructive occupancy can be defined as physical absence from a premises coupled with an intent to return to the premises at some point in the future." In re Lusiak, 247 B.R. 699, 703 (Bankr. N.D. Ohio 2000). Temporary absence can be a form of constructive occupancy. Id. Some jurisdictions allow constructive occupancy as a means to satisfy the homestead exemption requirements. See, e.g., In re Schissler, 350 B.R. 697, 700 (Bankr. W.D. Mo. 2000); In re McRoy, 204 B.R. 62, 65 (Bankr. D. Kan. 1996).

The Court declines to apply a "constructive occupancy" theory here. Even if the Court applied the constructive occupancy theory, it would not help Debtor. Debtor has entirely failed to show "constructive occupancy" or any real occupancy at all during the relevant time. As Debtor points out, constructive occupancy requires "a bona fide and clearly defined intention to occupy the premises at some future time as a homestead, accompanied or evidenced by overt preparatory acts in connection with the property definitely tending to show an intention." 40 C.J.S. Homesteads § 14. Debtor relies on his own testimony to try to satisfy this

standard. The Court rejects that testimony as insufficient to meet the "constructive occupancy" test. It fails to show any real intent to occupy the property as his homestead before incurring the December 30, 2008 Super Wings debt.

In fact, Debtor strongly implied in his testimony that the reason he "moved back" to Iowa from his California residence was because his CFO passed away in 2013. To that point, it is entirely unclear he ever intended to make the Property in Cedar Rapids, Iowa (as opposed to the California property) his homestead. More importantly, however, the Court rejects Debtor's testimony on his intentions because it is not credible.

**WHEREFORE**, Debtor's homestead will not be exempt regarding the debt owed to Super Wings.

Dated and Entered: March 3, 2015

_____
**THAD J. COLLINS**
**CHIEF BANKRUPTCY JUDGE**