# UNITED STATES BANKRUPTCY COURT

# NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| In Re: ) | Case No.: 14-01169-tjc11 |
| ) | |
| **JODY L. KEENER,** ) | Chapter 11 |
| ) | |
| Debtor and Debtor in Possession. ) | Hon. Thad J. Collins |
| ) | |
| PO Box 8415 ) | **DEBTOR'S MOTION FOR ORDER** |
| Cedar Rapids, IA 52408 ) | **AUTHORIZING SALE OF REAL** |
| ) | **ESTATE FREE AND CLEAR OF** |
| SSN: xxx-xx-8343 ) | **LIENS, CLAIMS AND** |
| ) | **ENCUMBRANCES** |
| ) | [517 – 521 3rd Ave. SW, Cedar Rapids] |
| ) | |
| ) | Date:  April 28, 2015 |
| ) | Time:  10:30 a.m. |
| _____ ) | Courtroom:  6th Floor |

**COMES NOW**, Jody L. Keener ("Keener or "Debtor"), Debtor and Debtor in Possession herein, by and through his duly-employed General Reorganization Counsel, Jeffrey D. Goetz, Esq., of the law firm of Bradshaw, Fowler, Proctor & Fairgrave, P.C., and hereby respectfully files the instant Motion for Order Authorizing Sale of Real Estate Free and Clear of Liens, Claims and Encumbrances, and would show this Honorable Court as follows:

1.  The Debtor filed his Voluntary Chapter 11 Petition on July 28, 2014 ("Petition Date"). The Debtor, an individual, is duly operating as a Debtor in Possession, pursuant to Bankruptcy Code Sections 1107 and 1108. There is no motion or application pending for the appointment of a Trustee or Examiner in this Case.

2.  This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334.  Venue in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2). The statutory predicates for relief sought herein include Code §§ 105(a), 363, 365 and Rules 2002, 6004, 6006 and 9006 of the Federal Rules of

Bankruptcy Procedures (the "Bankruptcy Rules").

3. The Debtor holds title to improved real estate and buildings currently used and operated as multi-tenant commercial operations in Cedar Rapids, Iowa. The improvements are locally known as 517 – 521 3rd Avenue SW, Cedar Rapids, Iowa 52404, and legally described as All of Lots 7, 8, 9, 10, 11, 12, 14, 15, 16, 17, 18 and the SW 30 feet of Lot 20 Auditor's Plat No. 37, in Cedar Rapids, Linn County, Iowa and the NW 70 feet of Lot 21 and NW 70 feet of the NE 20 feet of Lot 20, Auditor's Plat No. 37, in Cedar Rapids, Linn County, Iowa (collectively the "Real Estate").

4. The Debtor proposes to sell the subject Real Estate, and to that end, on or about March 17, 2015, the Debtor entered into an offer and acceptance agreement ("Agreement") with Maranatha Bible Church, an IRC 501(c)(3) Tax Exempt Charitable Organization and Iowa non-profit corporation (the "Buyer"). A true and exact copy of the Agreement is attached hereto as Exhibit "A" and incorporated herein by this reference.

5. The Debtor and Buyer both agreed to establish the fair market value of the subject Real Property based on an appraisal prepared by Appraisal Associates Company, a true and exact copy of which is attached as Exhibit "B" and incorporated by reference herein.  Based on that appraisal, the Debtor and the Buyer have agreed that the fair market value of the subject Real Estate for purposes of the proposed sale transaction shall be $1,680,000.00.

6. The proposed Agreement provides for Buyer to purchase the subject Real Estate by paying the Debtor $1,016,000 in Cash and providing the Debtor with acknowledgement of a Gift-In-Kind Charitable Income Tax Deduction Contribution which the Debtor can use to offset his Capital Gains Income Tax Liability which will be incurred upon consummation of the proposed Sale Transaction.  The income tax benefits analysis from the Debtor's General

Reorganization Accountant for the proposed Sale Transaction is more fully disclosed in detail below.

7.  The Real Estate is encumbered by a first and senior Mortgage, Loan No. 9090002480, and held by Guaranty Bank & Trust Company ("Guaranty Bank"). The loan payoff amount as of April 30, 2015 is approximately $614,460.06. (See Exhibit "C"). The Real Estate is further encumbered by a blanket lien in connection with Loan No. 30, held by Collins Community Credit Union ("Collins"). The Collins loan encumbers thirteen of the Debtor's properties and the total amount due under the loan is $1,769,306. Collins has agreed to accept $50,000 of the Net Sale Proceeds from the Sale Transaction in exchange for a release of its lien on the 521 3rd Avenue SW Real Estate.

**Relief Requested**

8.  The Debtor is seeking Court approval of a sale of the Real Estate to the Buyer pursuant to the terms of the Agreement, free and clear of all liens, claims, encumbrances and interests. The Debtor believes that a sale to the Buyer is in the best interest of the Debtor's estate and its creditors.

9.  Section 363 of the Bankruptcy Code governs the Debtor's ability to sell property of the estate outside of the ordinary course of business. Although this section does not set forth a standard for determining when it is appropriate to authorize such a sale, courts have uniformly held that such a sale should be approved when it is justified by a sound business purpose. *See In re Abbotts Dairies of Pennsylvania, Inc.*, 788 F.2d 143 (3d Cir. 1986); *In re Delaware & Hudson Ry. Co.*, 124 B.R. 169 (D. Del. 1991); *accord Stephens Indus., Inc. v. McClung*, 789 F.2d 386 (6th Cir. 1986); *Fulton State Bank v. Schipper* (*In re Schipper*), 933 F.2d 513, 515 (7th Cir. 1991); *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air*

*Lines, Inc.*), 780 F.2d 1223 (5th Cir. 1986); *Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp*)., 722 F.2d 1063 (2d Cir. 1983). The burden of establishing a rational business justification lies with the debtor. *Lionel*, 722 F.2d at 1070-71. However, once the debtor makes such a showing, a presumption will attach that the decision was made on an informed basis, in good faith and in the honest belief that the action was in the best interest of the company. *See, e.g.*, *Official Comm. Of Subordinated Bondholders v. Integrated Res., Inc.* (*In re Integrated Res., Inc.*), 147 B.R. 650, 656 (S.D.N.Y. 1992), *appeal dismissed*, 3 F.3d 49 (2d Cir. 1993).

10. Here, the proposed Sale Transaction is supported by the Appraisal and the Agreement, and is supported by ample business justification, and is reasonable and appropriate under the circumstances of these cases.

### The Proposed Transaction Satisfies All Applicable Legal Standards

11. Section 363(b)(1) of the Bankruptcy Code provides, in relevant part, that a debtor "after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." *See also* Bankruptcy Rule 6004(f)(1) ("All sales not in the ordinary course of business may be by private sale or by public auction"). This section generally permits a debtor to sell property of the estate outside of the ordinary course of its business where the proposed sale is a sound exercise of the debtor's business judgment and when such sale is proposed in good faith. *See Stephens Indus., Inc. v. McClung*, 789 F.2d 386, 390 (6th Cir. 1986) ("[A] bankruptcy court can authorize a sale of all a Chapter 11 debtor's assets under § 363(b)(1) when a sound business purpose dictates such action"); *Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1070 (2d Cir. 1983); *In re Channel One Commc'ns., Inc.*, 117 B.R. 493, 496 (Bankr. E.D. Mo. 1990).

12. In the instant case, the proposed Sale constitutes a sound exercise of the Debtor's

business judgment and has been proposed in good faith. A sale of the Real Estate will aid in minimizing the expenses of the Debtor's estate, resulting in greater distribution to creditors.

13. The Debtor believes this Motion and the Sale Transaction contemplated thereby is in the best interests of the bankruptcy estate and in the best interests of all other interested parties in this Chapter 11 case.

### Sale Free and Clear of Liens

14. Section 363(f) of the Bankruptcy Code authorizes a debtor to use, sell or lease property of the estate outside of the ordinary course of business, free and clear of any interest in such property. This Motion proposes the sale of the Real Estate free and clear of all interests, liens, claims and encumbrances, including existing or asserted rights of first refusal, contractual restrictions on transferability or other similar protective rights. Any such interests, liens, claims and encumbrances would attach to the proceeds from the sale of the Real Estate (the "Sale Proceeds") ultimately attributable to the property against or in which such interests, liens, claims or encumbrances are asserted.

15. Under Section 363(f)(2) of the Bankruptcy Code, a sale free and clear of all interests, liens, claims and encumbrances is permissible if all parties asserting liens on or other interests in the property consent. The Debtor is providing proper notice of this Motion to secured creditors, including but not limited Guaranty Bank and Collins Community Credit Union. Provided that no creditors or interested parties object to this Motion and the proposed Sale Transaction, Section 363(f)(2) will be satisfied. *See, e.g.*, *Veltman v. Whetzal*, 93 F.3d 517, 521 n.5 (8th Cir. 1996) (in a Chapter 7 case, stating that "[s]ome courts have found implied consent, however, when a party with an interest in the bankruptcy estate fails to object after receiving notice of the sale under subsection 363(f)(2)" (citing *Hargrave v. Twp. Of Pemberton* (*In re*

*Tabone, Inc.*), 175 B.R. 855, 858 (Bankr. D. N.J. 1994); *Citicorp Homeowners Servs., Inc. v. Elliot* (*In re Elliot*), 94 B.R. 343, 345 (E.D. Pa. 1988))).

**The Proposed Sale Transaction Does Not Establish Any Sub Rosa Plan of Reorganization**

16. A sale of assets may not be approved where such sale, rather than merely changing the composition of the debtor's assets, either restructures the right of creditors or predetermines the rights of creditors under any future plan of reorganization. *See Pension Benefit Guar. Corp., Cont'l Air Lines, Inc. v. Braniff Airways, Inc.* (*In re Braniff Airways, Inc.*), 700 F.2d 935, 939-40 (5th Cir. 1983); *Institutional Creditors of Cont'l Air Lines, Inc. v. Cont'l Air Lines, Inc.* (*In re Cont'l Air Lines, Inc.*), 780 F.2d 1223, 1227-28 (5th Cir. 1986).

17. In *Braniff*, the Fifth Circuit held that an agreement between the debtor and its creditors established a *sub rosa* plan of reorganization because, among other things, the agreement: (i) required that any future plan of reorganization allocate certain assets only to employees, shareholders or unsecured creditors of the debtor; (ii) required the secured creditors to vote a portion of their deficiency claim in favor of any future plan of reorganization approved by a majority of the unsecured creditors' committee; and (iii) provided for the release of claims by all parties against the debtors, its secured creditors and its officers and directors. 700 F.2d at 939-40.

18. Unlike *Braniff*, the sale transaction contemplated by this Motion will not restructure the rights of the Debtor's creditors or predetermine the rights of such creditors under any future plan of reorganization.

19. Furthermore, the Debtor has articulated sound business justifications for selling the Real Estate now, rather than as part of a plan. A Section 363 motion should be approved if it

is based on good business reasoning. *Comm. Of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d at 1070; *In re George Walsh Chevrolet, Inc.*, 118 B.R. 99, 101–02 (Bankr. E.D. Mo. 1990) (Court considered some of the following factors: whether all parties in interest received reasonable notice; whether the purchase price is fair and reasonable; whether there is a sound business reason for the sale; and whether the proposed sale unfairly benefits insiders or proprietary purchasers, or unfairly favors a creditor or class). All such factors have been met here.

20.     The Agreement is a fair offer for the Real Estate at this time. Given the current economic climate, the Debtor believes it would be imprudent to ignore such an attractive offer now when the value of the Real Estate could be adversely affected or deteriorate in the coming months prior to plan confirmation. Basically, the Debtor is taking the conservative approach that a "bird in hand is worth two in the bush".

### Sale Price and Terms were Negotiated at Arm's Length and in Good Faith

21.     The Agreement was negotiated by Debtor and the Buyer at arm's length, without collusion and in good faith within the meaning of Section 363(m) of the Bankruptcy Code, and Debtor accordingly requests that the Court determine that the entire sale process was conducted in good faith within the meaning of Section 363(m) of the Bankruptcy Code and that the Seller and the Buyer are entitled to the protections of Section 363(m) of the Bankruptcy Code. *See In re Apex Oil Co.,* 92 B.R. 847, 874 (Bankr. E.D. Mo. 1988).

22.     In the Debtor's view, the proposed Sale Transaction of the Real Estate represents substantial value to the Debtor's estate inasmuch as it provides favorable terms for the disposition of the Real Estate at a price that represents fair and reasonable consideration having a certain value. *See id.* at 869.  *See also Mellon Bank, N.A., v. Metro Commc'ns, Inc.*, 945 F.2d

635, 646–47 (3d. Cir. 1991) (reasonably equivalent value under the Bankruptcy Code).

23. The Debtor's General Reorganization Accountant, Peter Jacobs, has prepared a Tax Analysis of the proposed Sale Transaction, a copy of which is attached as Exhibit "D", and incorporated by reference herein. Notwithstanding the Gift-In-Kind Charitable Income Tax Deduction, that Tax Analysis considers consummation of the proposed Sale Transaction now as providing significant cash and tax benefits to the Bankruptcy Estate. This is primarily because the Debtor's purchase price for the subject property in 1996 for $900,000 currently leaves the Debtor with a current Adjusted Tax Basis in the Real Estate of $618,874. Based on the proposed Sale Transaction, the Gift-In-Kind Charitable Income Tax Deduction will allow the Debtor to offset approximately $608,996 in Taxable Gain that will result from this Sale Transaction. In the end, the proposed Sale Transaction will result in approximately $232,400 in income tax savings from the Gift-In-Kind Charitable Income Tax Deduction, and an overall estimated Cash Benefit to the Debtor and his Bankruptcy Estate of approximately $436,031.

24. The Debtor's duly-employed Commercial Real Estate Agent, Michael J. Esker, has prepared a letter providing additional support why the proposed Sale Transaction of the Real Estate now is in the best interests of the Debtor and his Bankruptcy Estate, a true and exact copy of which is attached as Exhibit "E" and incorporated by reference herein. Based on the fact that the subject Real Estate has been on and off the market for over six years, if the proposed Sale Transaction is not consummated, it is estimated that the Real Estate would be on the market for an additional two to four years. Further, the carrying costs of maintaining the Real Estate while on the market, such as taxes, mortgage payments, maintenance, and utilities, are significant, totaling $92,296 (See Exhibits "D" & "E").

**Reduction or Elimination of 14-Day Stay Under Bankruptcy Rules 6004(h) and 6006(d)**

25. Time is of the essence in approving and closing the Sale Transaction, and any unnecessary delay in closing the Sale Transaction could result in the collapse of the Sale Transaction. Accordingly, this Court should waive the 14-day period staying any order to sell or assign property of the estate imposed by Bankruptcy Rules 6004(h) and 6006(d).

**CONCLUSION**

Based upon the authorities and facts detailed above, the Debtor submits that the Court should approve the Motion. Such relief is warranted because the Debtor has shown that the sale of the Real Estate is in the best interests of the Debtor, its estate and creditors, and because the decision to sell the Real Estate was reached in the exercise of the Debtor's sound business judgment, after careful deliberation of its consequences and possible alternatives.

WHEREFORE, the Debtor respectfully requests that the Court hear this Motion and (a) enter an Order authorizing the Debtor's sale of the Real Estate, free and clear of all liens, encumbrances, claims and interests; (b) find that the Sale be effective immediately and that the stay provisions of Bankruptcy Rules 6004(h) and 6006(d) do not apply; and (c) provide such other relief as is just and proper under the circumstances.

Date: April 6, 2015                             Respectfully submitted,

                                                /s/ Jeffrey D. Goetz
                                                Jeffrey D. Goetz, Esq., IS #9999366
                                                Bradshaw Fowler Proctor & Fairgrave, P.C.
                                                801 Grand Avenue, Suite 3700
                                                Des Moines, IA 50309-8004
                                                515/246-5817
                                                515/246-5808 FAX
                                                goetz.jeffrey@bradshawlaw.com

                                                General Reorganization Counsel
                                                for Jody L. Keener, Debtor and
                                                Debtor in Possession

-10-

CERTIFICATE OF SERVICE

This document was served electronically on parties who receive electronic notice through CM/ECF as listed on CM/ECF's notice of electronic filing.

*/s/      Barbara  Warner*

Page 1 of 7

**COMMERCIAL/NON-RESIDENTIAL OFFER FOR REAL ESTATE**
(Including Acceptance, Counter, or Rejection)



11:00  [X] a.m. [ ] p.m.   3/17/15
TIME                       DATE OF OFFER

OFFICE USE ONLY:
OFFER ACCEPTED _____

Check all boxes that apply.

I. **DISCLOSURE CONFIRMATIONS.**
   A. **AGENCY.** By signing below, Buyer and Seller confirm that written disclosures of agency representation were provided to them, they understand said representation, and the disclosures were provided prior to signing this Offer For Real Estate.
   B. **SELLER PROPERTY DISCLOSURE.** If this offer is for 1 to 4 unit residential property, Seller or Seller's Agent must deliver a written disclosure statement to Buyer prior to Seller accepting an offer, or counter-offering to Buyer. By signing below, Buyer confirms Buyer ( [ ] has) ( [X] has not) received and read Seller's property disclosure statement. In the event that Seller is exempt from providing said disclosure under the Code of Iowa, check here [ ].
   C. **LEAD-BASED PAINT.** If this offer is for a residential property built prior to 1978, Seller or Seller's Agent must provide Buyer with: (1) an EPA-approved lead hazard information pamphlet and (2) Seller's Lead-Based Paint Disclosure Information Statement. By signing below, Buyer confirms that Buyer ( [ ] has) ( [X] has not) received and read the above described documents. The Disclosure Statement signed by all parties, is to be attached hereto. In the event that Seller is exempt from providing said documents under EPA regulations, check here [ ].
   D. **REQUEST TO COMPLETE FORM DOCUMENTS AND REALTOR® PERMISSION TO CALL.** Buyer and Seller request that Broker select and complete documents allowed by law, and authorize REALTOR® /Broker to call, fax, and email residence.

1. _____ BUYER & DATE  1. _____ SELLER & DATE

2. _____ BUYER & DATE  2. _____ SELLER & DATE

II. **OFFER TO:** _____ Mr. Jody Keener _____ (herein designated as Seller).
The undersigned _____ Maranatha Bible Church _____ (herein designated as Buyer) hereby offer to buy the real property situated in _____ Linn _____ County, Iowa. Located at and briefly described as _____ 517 - 523 3rd AVE SW _____, _____ Cedar Rapids _____, Iowa, and legally described as:
A.P.#37 LOTS 7 THRY STR/LB 10
_____
_____,

hereinafter designated as "Property," together with any easements and servient estates appurtenant thereto and subject to zoning restrictions, restrictive covenants, easements, and mineral reservation, if any, and agrees to pay you for such property the sum of
$ ___1,016,000__ AS FOLLOWS: $ ___5,000__ earnest money to be held in trust by ___Coldwell Banker Hedges___
( [X] Seller's) ( [ ] Buyer's) ( [ ] both Seller's and Buyer's) Agent, hereinafter referred to as "Broker" or "Agent", or an escrow company and credited toward the purchase price at closing, pending delivery of final papers and the balance upon delivery of warranty deed or upon execution of a real estate contract as hereinafter provided Buyers, on possession, are permitted to use the property for ___Church (non-profit)___. Earnest money scheduled to be held in excess of 90 days and in an amount equal to or exceeding $7,500 shall be placed in an interest-bearing account with interest accruing in favor of ( [X] Buyer) ( [ ] Seller). The term "Broker" shall also include Broker's affiliated licensees (brokers and salespersons). The terms "Owner" and/or "Seller" shall include seller or vendor. The term "Buyer" shall include buyer or vendee. The terms "sell" and "sale" shall include sale, lease, rent, exchange or option.

Check the appropriate boxes. (A) or (B) or (C) or (D) and if applicable (E)

[X] (A)   **CASH** to be paid on settlement date. This offer is not contingent upon Buyer obtaining financing. Seller has the right to receive verification of funds.

[ ] (B)   **NEW MORTGAGE:** This contract is contingent upon the Buyer obtaining a bona fide commitment for a(n):
          [ ] Conventional
          [ ] ARM
          [ ] FHA
          [ ] RECD
          [ ] VA (In the event of FHA or VA financing, see Addendum – Offer for Real Estate attached hereto and by this reference made apart of this contract.)
          [ ] Other_____

Buyers __PS__, _____ and Sellers _____, _____ acknowledge that they have read this page.
       (Initials)              (Initials)

Serial# 043550-200141-7879051
Prepared by: Tony Hocamp | Sandersfeld Iowa Realty | thocamp@netins.net |

*formsimplicity*

Mortgage for not more than _____% of the purchase price at _____% interest rate no later than _____, _____. All usual costs incurred in securing such mortgage shall be paid by the _____. Seller agrees to pay the loan placement fee, if required, not to exceed _____% of the mortgage obtained by Buyer. The balance of the purchase price less the proceeds of such mortgage shall be paid by Buyer in cash.

**FINANCING COMMITMENT.** Buyer agrees to make loan application (if applicable) immediately, or within _____ days, and use Buyer's best good faith effort to obtain a financing commitment. If Buyer has timely made the application as set out herein and a loan commitment (with all lender contingencies met) cannot be obtained by Buyer, this agreement shall be null and void and all earnest money shall be returned to Buyer. Buyer shall immediately confirm insurability of Property.

**Financing Commitments:**
- ☐ Buyer's delivery of a copy of a written loan commitment to the Seller (even if the commitment is subject to conditions specified by the lender, such as appraisal) shall satisfy the Buyer's financing contingency, and the financing contingency shall be considered removed from this Purchase Contract as of the date of delivery. If Buyer does not make timely delivery of said commitment, as stated, then Seller may terminate this Offer by written notice of termination to Buyer.
- ☐ Both parties await appraisal. Appraisal must be completed by: _____
- ☐ Awaiting other mutually agreed financing terms which shall be in writing.

☐ **(C) ASSUMPTION OF MORTGAGE OR CONTRACT:** see Addendum – Offer for Real Estate attached and made a part of this contract.

☐ **(D) INSTALLMENT CONTRACT:** see Addendum – Offer for Real Estate attached and made a part of this contract.

☒ **(E) OTHER TERMS/CONTINGENCIES/SPECIAL PROVISIONS** (i.e., any subject to sale, including zoning permits, utilities, environmental assessments, etc.): 1) Offer includes building and entire parking as outlined in "attachment B"  2) Buyer has secured financing from Hill Bank & Trust  3) Offer may include Gift-in-Kind by Seller at a mutually agreed value supported by the appraisal to be conducted by the Buyer.  4) Offer contingent on favorable Maranatha Bible Church congregational vote of approved offer. 5) Closing shall be conducted by Buyer's bank or agent so determined by the Buyer's bank.  6) Property purchased "As-Is"  7) Offer subject to court approval within 30-days of accepted offer by seller.

**This agreement is also subject to the following terms and conditions:**

1. **TRUST PAYMENTS.** All funds deposited as part payments shall be held by Broker in trust pending acceptance of this offer, and examination of the abstract and delivery of deed or formal contract. Buyer authorizes the company financing this purchase to pay all funds to Broker for the benefit of Seller and Seller authorizes Agent to accept and manage payments and disbursements. At time of settlement, funds of the purchase price may be used to pay taxes, other liens, and closing costs to comply with the above requirements, to be handled under supervision of Broker, and subject to approval of Buyer on title questions which may be needed to produce marketable title. If Buyer is refunded any Earnest Money, any expenses incurred on Buyer's behalf shall be deducted and paid to the creditors entitled.

   **Interest on Trust Account:** If indicated by "yes" in the following space  N/A , the trust funds paid by the Buyers to Broker shall be deposited by the Broker in an interest bearing trust account and the interest earned thereon shall accrue for the benefit of the _____, with interest credited to Social Security# _____ otherwise, the interest shall be forwarded to the Iowa Association of REALTORS® Foundation.

2. **REAL ESTATE TAXES, SPECIAL ASSESSMENTS, AND CHARGES.**
   a. All regular taxes due and payable in the fiscal year in which possession is given are to be paid by Seller as well as all unpaid taxes that are liens for prior years.

   b. All regular taxes for the fiscal year in which possession is given (due and payable in the following fiscal year) are to be pro-rated between Buyer and Seller as of the date of possession. The basis of such proration shall be the taxes that were certified and payable in the prior fiscal year. If such taxes are not based upon a full assessment of the present property improvements the proration shall be based on the current mileage rate and the assessed value for the tax period to date of possession shown on the assessor's records, less tax abatement, if any.  Buyer should verify any potential future tax liabilities. If Buyer is purchasing under an installment contract see the Commercial/Non-Residential "Addendum – Offer for Real Estate" attached and made a part of this contract.
      - ☐ Caution: If property has not been fully assessed for tax purposed, or reassessment is completed or pending, tax proration shall be on the basis of $ _____ estimated annual tax.

   c. All special assessments spread on the Treasurer's Books at the time of the acceptance of this offer are to be paid by Seller. All

Buyers _BS_ , _____ and Sellers _____ , _____ acknowledge that they have read this page.
                (Initials)                          (Initials)

Serial# 043550-200141-7879051
Prepared by: Tony Hocamp | Sandersfeld Iowa Realty | thocamp@netins.net |                                  formsimplicity

Offer for Real Estate – Commercial/Non-Residential                                                                    Page 3 of 7

      charges for solid waste removal, utilities, and assessments for maintenance attributable to Seller's possession are to be paid by Seller. All liens caused by resolution of necessity, such as mowing, snow removal, etc. are to be paid by Seller.
   d. All subsequent taxes and special assessments are to be paid by Buyer.

3. **CLOSING AND POSSESSION.** Closing shall be on or before __5:00__ ☐ a.m. or ☒ p.m. __April 23__, __2015__ and be made upon delivery of an instrument of title, but not later than date of possession, unless an interim occupancy agreement is entered into between the parties. Closing to be under the supervision of Seller's Agent, __M. Esker Coldwell Bank__ Possession to be given __5:00__ ☐ a.m. or ☒ p.m. __April 23__, __2015__, and adjustment of interest, taxes, insurance and rents to be made on this date. This transaction shall be considered closed upon filing of documents and receipt of all funds by the broker. All property, including keys, alarms, and garage door openers shall be delivered to Buyer at possession. Buyer's Agent is __Tony Hocamp, Sandersfeld Iowa Realty__.

4. **INSURANCE.** Seller shall bear the risk of loss or damage to property prior to settlement or possession, whichever first occurs. Seller agrees to maintain existing insurance, and Buyer shall immediately confirm insurability of Property and may also purchase insurance. In the event of substantial damage or destruction prior to closing, this Agreement may be null and void if Buyer desires. Buyer, however, shall have the right to complete the closing and receive insurance proceeds regardless of the extent of the damage plus a credit towards the purchase price equal to the amount of the Seller's deductible on such policy. The property shall be deemed substantially damaged or destroyed if it cannot be restored to its present condition on or before closing date.

5. **FLOOD HAZARD ZONE.** Buyer has been advised that the property (☐ is) (☐ is not) (☒ may be) in an area found to have special flood hazards. If the property is in a flood hazard area it may be necessary to purchase Flood Insurance in order to obtain financing. **For further information, Buyer should consult a lender and insurance carrier.**

6. **INCLUDED PROPERTY** (if any). All property that integrally belongs to, are specifically adapted to, or is part of the real estate (except rental items), whether attached or detached, such as wall to wall carpeting and vinyl, light fixtures and bulbs, ceiling fan(s), mirrors, shelving, shades, rods, blinds, awnings, shutters, storm windows, storm doors, screens, plumbing fixtures, sump pump, water heater, water softener, automatic heating equipment, fuel tank, air conditioning equipment (except window), door chimes, alarm devices, built-in items and electrical service cable/fencing, garage door opener and control(s), other attached fixtures, radio and/or attached TV receiving equipment, fencing, trees, bushes, shrubs, plants, garden bulbs, water heaters and softeners, sump pumps, attached or fitted floor coverings, installed security systems, central vacuum systems and accessories, in-ground lawn sprinkler systems and component parts, built in appliances, fences, fireplace screen, fire grate and attached equipment, appurtenant structures or equipment, storage buildings, and rural water membership shall be considered a part of real estate and included in this sale.

    **OTHER INCLUDED ITEMS, INCLUDING TRADE FIXTURES, MACHINERY AND EQUIPMENT:**
    1) To include two conference tables and chairs located in the conference rooms. All other personal property to be removed.

    **EXCLUDED PROPERTY, TRADE FIXTURES, MACHINERY AND EQUIPMENT:**

7. **PERSONAL PROPERTY AND DEBRIS.** Seller agrees to remove all debris and all personal property not included herein from the property by possession date unless there is a prior written agreement by the parties.

8. **DUTIES OF PARTIES:**
    a. Seller and Buyer acknowledge and agree that REALTOR® /Broker(s), its affiliated licensees and employees: (1) must respond to all questions of the parties, however they are not required to discover hidden defects or give advice on matters outside the scope of their real estate license; (2) make no, and Seller and Buyer are not relying upon, representations or warranties as to the physical or mechanical condition of the property, its size, value, future value, income potential, whether the basement is waterproof, etc.; (3) are not qualified to advise on questions concerning the condition of the property, the legal sufficiency, legal effect or tax consequences of this document or transaction. **For such matters, Seller and Buyer are advised to consult the appropriate professional(s)**.
    b. Seller and Buyer acknowledge that the Seller of real property has a legal duty to disclose MATERIAL ADVERSE FACTS and MATERIAL DEFECTS of which Seller has actual knowledge and which a reasonable inspection by Buyer would not reveal. **Buyer has the right to obtain inspections, survey and measurements at Buyer's expense.** Buyer shall immediately confirm insurability of Property. Buyer is hereby advised to request that special provisions be written into this contract prior to signing same, to cover any and all conditions which Buyer might consider to be questionable or problematical (whether such be inspection for termites, drainage, water and soil conditions, adequacy of structure or any components, zoning, boundaries, utility connections,

      Buyers __PS__, _____ and Sellers _____, _____ acknowledge that they have read this page.
              (Initials)             (Initials)

or any other matters).

    c. By acceptance of the Offer, the Seller warrants and represents: That Seller has no notice or knowledge of any planned public improvement which may result in special assessments or other liens, that no government agency has served any notice requiring repair, alterations or corrections of any existing conditions. This representation of Seller shall survive the closing of this transaction.

9. **JOINT TENANCY IN PROCEEDS AND IN SECURITY RIGHTS IN REAL ESTATE.** If Seller, immediately preceding this offer, holds title to the property in joint tenancy, and such joint tenancy is not later destroyed by operation of law or by acts of Seller, then (1) the proceeds of this sale, and any continuing and/or recaptured rights of Seller in real estate shall be and continue in Seller as joint tenants with rights of survivorship and not as tenants in common; and (2) Buyer in the event of the death of either Seller agree to pay any balance of the proceeds of this sale to the surviving Seller and to accept deed from such surviving Seller.

10. **CONDITION OF PROPERTY.**
    a. The property as of the date of this agreement including buildings, grounds, and all improvements will be preserved by Seller in its present condition until possession or closing, whichever takes place first, ordinary wear and tear excepted. Buyer shall be permitted to make a walk through inspection of the property prior to possession or closing, whichever is sooner, in order to determine that there has been no material change in the condition of property.

    b. **Buyer is advised to have property inspected by professional inspector(s).** If improvements on the property have been previously occupied, Buyer may choose one of the following alternatives relative to the condition and quality of the property:

        ☐ i. Within _____ days after the final acceptance date Buyer may, at Buyer's sole expense, have the property inspected by a qualified person or persons of Buyer's choice to determine if there are any structural, mechanical, plumbing, electrical, or environmental deficiencies, including hazardous materials, substances, conditions, or waste. Buyer to indemnify Seller for any damage resulting from the environmental investigation. Within this same period, Buyer may notify Seller in writing of any such deficiency. Failure to do so shall be deemed a waiver of Buyer's inspection and repair rights and Buyer agrees to accept the property in its present condition. In the event of any claim or demand by Buyer as a result of inspections, Seller shall within 72 hours of notification declare and commence one of the following options: (1) making said items operational or functional or otherwise curing the deficiency, or (2) amending this agreement by giving Buyer a credit for the cost of curing the deficiency, or (3) canceling this agreement and refunding Buyer's earnest money deposit or any sums paid directly to Seller. If Seller does not promptly cure all such deficiencies in a manner mutually agreeable and confirmed by written addendum, signed by the parties (either pursuant to parenthetical 1 or 2 above), then buyer may declare this offer null and void and shall have the right to all payments returned.

        ☐ ii. Buyer has verified any information that is important to Buyer by an independent investigation and/or independent inspector. Further, Buyer acknowledges that Buyer has made a careful and satisfactory inspection of the property and is purchasing the property in its existing condition.

        ☒ iii. Seller has offered Property in its "As-is" condition and Buyer accepts Property in its "As-is" condition. Even if an inspection is conducted, Seller shall not be obligated to replace/repair any item(s) and is not bound to release any Earnest Money or void contract.

    c. If acceptance is made by Buyer after inspection, under b(i) above, or if no inspection is made, or if offered and sold "As-is", Buyer hereby agrees that by delivery of deed, Buyer accepts property in its "As Is" condition at time of settlement, without warranties or guarantees of any kind by Seller or Broker(s) or employees of either concerning the working condition of systems or appliances, or condition or value of the property and waives Buyer's right to object to its condition or assert any claim related to the property at any time in the future. This provision shall survive delivery of deed to Buyer.

    d. **New Construction** : If the improvements on the subject property are under construction or are to be constructed, this Agreement shall be subject to approval of plans and specifications by the parties within _____ days of final acceptance of this Agreement. This offer to buy is not a construction contract. The contract for construction will be a separate agreement between the Contractor and Buyer which will set forth all of the terms, conditions and specifications of the property to be constructed. **Broker(s) and employees make no warranties as to the quality of construction or materials or any warranty of habitability.**

11. **WOOD PEST INSPECTION.** Buyer may request a pest control inspection by a licensed pest inspector within _____ days after acceptance of this Offer, which shall be done at ____ Seller's or ____ Buyer's expense except as otherwise agreed in

Buyers _PS_ , _____ and Sellers _____ , _____ acknowledge that they have read this page.
    (Initials)          (Initials)

writing (if not marked Buyer assumes expense). Should evidence of termites or wood destroying insects be found, the property and structure(s) may be treated by a licensed pest exterminator in an appropriate manner at Seller's option, and shall include all treatment and repair reasonably required by Buyer. Buyer agrees to accept treated and repaired property; or prior to the commencement of treatment and repairs, shall have the option of declaring this agreement null and void and be entitled to full return of the earnest money. If Property is sold in its "As-is" condition, this wood pest inspection paragraph is not applicable to this Offer for Real Estate. This provision does not apply to fences, trees, shrubs, or outbuildings other than garages.

12. **SEPTIC TEST, WELL TEST.** If the property has a well or wells or is served by a septic system, the Buyers may, at their expense, within  N/A  days after acceptance of the offer, have the well or wells and the septic system inspected by a qualified inspector, to determine if the wells and septic system are working properly. If Buyers receive an unsatisfactory report, which cannot be resolved between the parties within days after receipt thereof, then upon written notice from Buyers to Sellers, this Agreement shall be null and void and all earnest money paid hereunder shall be returned to Buyers. If Property is sold in its "As-is" condition, this septic test, well test paragraph is not applicable to this Offer for Real Estate.

13. **SURVEY.** Buyer may, prior to closing, have the property surveyed at Buyer's expense. If Buyers elects to have the survey made, Buyer will have the survey completed at least three (3) business days prior to the scheduled closing. If the survey, certified by a Registered Land Surveyor, shows any encroachment on property, or if any improvements located on the subject property encroach on lands of others, such encroachments shall be treated as a title defect.

14. **LEASE TERMINATION.** If indicated by "Yes" in the following space  N/A , it shall be the responsibility of Sellers at Seller's expense to terminate all rights of existing tenants so Buyers shall have sole possession and at closing Sellers shall exhibit evidence satisfactory to Buyers of such termination. Seller shall furnish copies of all leases and agreements between Tenants and Seller and this offer (☐ is) (☒ is not) subject to Buyer approving said leases and agreements by (date) _____.

15. **REMEDIES OF THE PARTIES - FORFEITURE - FORECLOSURE - REAL ESTATE COMMISSIONS.**
    a. If Seller fails to fulfill this agreement, Seller will pay to REALTOR® /Broker the professional service fee (if any) in full as stated in the Exclusive Listing Agreement or other written commission agreement corresponding to the property, and Buyer shall have the right to have all payments returned or to proceed by an action or actions at law or in equity.
    b. If Buyer fails to fulfill this agreement, Buyer will pay to REALTOR® /Broker the professional service fee (if any) in full as stated within the Buyer Agency Agreement or other written commission agreement, and all payments by Buyer may be forfeited and retained by Seller as provided in the Code of Iowa.
    c. In addition to the foregoing remedies, Buyer and Seller each shall be entitled to any and all other remedies, or action at law or in equity, including foreclosure, and the party at fault shall pay costs and attorney fees, and a receiver may be appointed.

16. **COURT APPROVAL.** If the property is an asset of any estate, trust, conservatorship, or receivership, this contract shall be subject to Court approval, unless declared unnecessary by Buyer. If necessary, the appropriate fiduciary shall proceed promptly and diligently to bring the matter on for hearing for Court approval. In this event a Court Officer's Deed shall be used.

17. **ABSTRACT AND TITLE.** Seller shall promptly provide, at Seller's expense, an abstract of title, continued to and including date of acceptance of this Agreement. Such abstract shall be delivered to an attorney selected by the Buyers or Buyer's lender for a title opinion. Seller shall, in the alternative if requested by Buyer of Buyer's lender, provide at Seller's expense a written lien search continued to and including the date of acceptance of this Agreement. Such lien search shall be delivered to a title insurer. Seller agrees to make every reasonable effort to promptly perfect title in accordance with such opinion or title policy so that upon conveyance, title shall be deemed marketable incompliance with this Agreement and the laws of the State of Iowa and, if applicable, the title policy. Seller may await reasonable assurance that Buyer is fully approved by lender or that Buyer will in Seller's judgment proceed with the transaction before updating abstract.

18. **DEED.** Upon payment of purchase price, Seller shall convey title by general warranty deed, ☐ if not general then _____ N/A _____ deed, free and clear of liens and encumbrances, reservations, exceptions or modifications except as the instrument otherwise expressly provides. All warranties shall extend to time of acceptance of this offer, with special warranties as to acts of Seller up to time of delivery of deed.

19. **GENERAL PROVISIONS.** In the performance of each part of this agreement, time shall be of the essence. This agreement shall be binding on and inure to the benefit of the heirs, executors, administrators, assigns and successors in interest of the respective parties. This agreement shall survive the closing. Paragraph headings are for the convenience of reference and shall not limit nor affect the meaning of this agreement. Words and phrases herein, including any acknowledgement hereof, shall be construed as in the singular or

Buyers _PS_ , _____ and Sellers _____ , _____ acknowledge that they have read this page.
                (Initials)                    (Initials)

plural number, and as masculine, feminine or neuter gender, according to the context.

20. **NOTICE.** Any notice required under this Agreement shall be deemed delivered when it is received either by hand delivery, facsimile, electronic communication or certified mail. Persons designated for receipt of any notice shall be Seller(s) and Buyer(s) at the addresses set forth below or their Broker or Agent. Electronic or facsimile transmission sent to the other party or to the appropriate Broker, followed by electronic or faxed acknowledgement of receipt, shall constitute delivery of signed document.

21. **ENTIRE AGREEMENT.** This document contains the entire agreement of the parties and supersedes all prior Offers with respect to the property. This Offer may be modified only by a written agreement signed and dated by both parties. This Offer for Real Estate shall not be assigned by Buyer without the written consent of Seller.

22. **MEDIATION** . In the event of a dispute, Buyer and Seller agree to consider mediation as an alternative to initiating legal action. The mediation will be conducted in accordance with the rules and procedures of a mutually agreed mediation service. Even when utilizing mediation, parties may still seek legal remedies.

23. **OTHER PROVISIONS.** All other provisions, if any, shall be by addendum or amendment to this Agreement.

24. **INDEMNITY:** If a mutual mistake regarding the rights and obligations of the parties is discovered after closing, that mistake shall be corrected by a mutual agreement. If the error is a monetary mistake, it is to be assessed and immediately collected from the party originally legally liable.

25. **ACCEPTANCE.** When accepted, this offer shall become a binding contract for the sale and purchase of the above described property and the professional service fee(s) shall be due to the Agent(s) in accordance with the Exclusive Listing Agreement, Buyer Agency Agreement or other written commission agreement, between either party and their Agent(s). This Offer shall not negate or change any of the conditions or terms of said Agreement(s), which, by this reference shall remain in full force and effect through the closing. If this offer is not accepted by Seller on or before __5:00__ ☐ a.m. or ☒ p.m. __MARCH 19th__, __2015__, it shall become null and void and the initial payment shall be repaid to Buyer without liability on the part of said Agent(s) to either party.

**THIS IS A LEGALLY BINDING CONTRACT.**
**If not understood, consult with the lawyer of your choice.**

Receipt of a copy of this agreement is acknowledged by the parties hereto.

| 1. _Guy E Schaff_ | 2. |
|---|---|
| VICE CHAIRMAN elder Board  **BUYER** | **BUYER** |
| Maranatha Bible Church | |
| **ADDRESS** | **ADDRESS** |
| 526 3rd AVE SW | |
| **CITY, STATE, ZIP** | **CITY, STATE, ZIP** |
| Cedar Rapids, IA  52404 | |
| **PHONE** | **PHONE** |
| | |
| **BUYER TAXPAYER IDENTIFICATION NUMBER** (optional) | **BUYER TAXPAYER IDENTIFICATION NUMBER** (optional) |

Seller hereby ( ☐ **accepts**) ( ☐ **counters**) the above offer at _____  ☐ a.m. or ☐ p.m. _____, _____. (☐ See attached counter offer) or (☐ Seller has made a counter offer by changing and initialing terms herein. This counter offer shall become null and void unless accepted by Buyer initialing said

Buyers _PS_ , _____ and Sellers _____ , _____ acknowledge that they have read this page.
                    (Initials)                         (Initials)

Serial#:  043550-200141-7879051
Prepared by: Tony Hocamp | Sandersfeld Iowa Realty | thocamp@netins.net |                                                      formsimplicity

**Offer for Real Estate – Commercial/Non-Residential**  Page 7 of 7

terms on or before _____ ☐ a.m. or ☐ p.m. _____, _____). Seller reserves the right to withdraw this counteroffer by notifying Buyer of withdrawal prior to Buyer acceptance of this counteroffer. Seller may accept other offers only after withdrawing this counteroffer, without liability on the part of the Agent's involved. Seller's Broker shall take backup offers up to the time of closing after this offer has been accepted by Seller; and ( ☐ **shall**) ( ☐ **shall not**) continue to show this property for sale.

1.                                                                  2.

| | |
|---|---|
| **SELLER** Mr. Jody Keener | **SELLER** |
| **ADDRESS** C/O Mike Esker, Coldwell Banker Hedges | **ADDRESS** |
| **CITY, STATE, ZIP** Cedar Rapids, IA | **CITY, STATE, ZIP** |
| **PHONE** | **PHONE** |

Buyer's Attorney _____

Seller's Attorney _____

Abstract location _____

Mortgage with _____

OPTIONAL:

1. _____  2. _____
Seller's Taxpayer Identification Number

☐ **This offer rejected (Seller signature required):** _____

Time _____ ☐ a.m. or ☐ p.m.
Date _____

Copyright © 10/2007 The Iowa Association of REALTORS®

Buyers _JB_, _____ and Sellers _____, _____ acknowledge that they have read this page.
(Initials)              (Initials)

Serial#: 043550-200141-7879051
Prepared by: Tony Hocamp | Sandersfeld Iowa Realty | thocamp@netins.net |

formsimplicity

| Commercial | 521 3RD AVE SW | | CRAAR |
|---|---|---|---|



| | | | | | |
|---|---|---|---|---|---|
| MLS#: | 1307744 | COM - Active | List Price: | $ 2,299,000 | |
| Area: | SW Quadrant | | Subtype: | RET, OFF | |
| Address: | 521 3RD AVE SW | | | | |
| City: | Cedar Rapids | | Zip Code: | 52404 | |
| County: | LINN | | Parcel #: | 142918200100000 | |
| For Sale: | Y | For Lease: N | Min Lse Mos: | | |
| Monthly Lease: | | | Total Bldg SqFt: | 25730 | |
| Price/SqFt: | | | Maximum SqFt for Lease: | | |
| No. of Stories: | | | Minimum SqFt for Lease: | | |
| Trade/Bldg: | | | Gross Tax: | $ 0 | |
| Zoning: | C-2 | | Total Pass Through per SF: | | |
| Assoc Fee: | Possession: | | Year Built: 1973 | Lot Size: | 32190 |
| Legal Desc: | A.P. #37 LOTS 7 THRY STR/LB 10 | | | | |
| Direction: | CORNER OF 3RD AVE & 6TH ST SW | | | | |

**Remarks**
Quick access to I-380, updated interior to Class A office space. Large conference and break room. Furniture available for a fee.

**Special Instructions**

**Agent Remarks:**

**Features**

| | | | |
|---|---|---|---|
| Building Desc: | Multi Tenant | Sale Includes: | Land, Building |
| Ceiling Height: | 7ft-10ft | Construction: | Concrete Block |
| Floor: | Concrete Slab | | |
| Roof: | Bl-Up Grav | | |
| Power Available: | 220 Volt | | |
| Utilities: | City Water, City Sewer, Gas-Natural | | |
| Heating/Cooling: | Central Heat, Central Air | | |
| Traffic Count: | | | |
| Additional Info: | Photos | | |
| Miscellaneous: | Rest Rooms, Disp Window, Sprinkler, Off Str Pkg | | |
| Environmental: | | | |
| Owner pays: | | | |
| Tenant Pays: | | | |
| Terms: | | | |
| Commission Based On: | | Lease Type: | Total Pass Through per SF: |
| CCB (SOC): | 2.5 | | Commission Paid: |

**Office Information**

| | | | |
|---|---|---|---|
| Owner Name: | KEENER | Owner Phone: | Restricted: N  VRC: N  CCB: 2.5 |
| List Agent: | ESKERMIKE121 - MICHAEL ESKER - HomePh: 319-929-0600 - OtherPh: 319-373-4895 - CellPh: 319-929-0600 | | |
| List Office: | CHED03 - COLDWELL BANKER HEDGES CORRIDOR - Office Phone: 319-731-2000 | | |
| List Agent 2: | | List Office 2: | |
| List Date: | 11/15/13 | | |

-- INFORMATION HEREIN DEEMED RELIABLE BUT NOT GUARANTEED. --        12/01/14

ATTACHMENT "B"