IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| JODY L. KEENER ) | |
| ) | Bankruptcy No. 14-01169 |
| Debtor. ) | |

**MEMORANDUM AND ORDERS RE SUPER WINGS' MOTION FOR ADEQUATE PROTECTION AND RELATED FILINGS**

Debtor's Motion for Summary Judgment on Super Wings' Motion for Adequate Protection came before the Court on April 20, 2016. Jeff Goetz, Krystal Mikkilineni, and Justin LaVan appeared for Debtor Jody Keener. Joe Schmall appeared for Creditor Collins Community Credit Union ("Collins"). Eric Lam appeared for Creditor Super Wings International ("Super Wings"). John Schmillen appeared for the United States Trustee. After making a short record, the Court received and admitted Debtor's and Super Wings' exhibits. The Court then heard argument on the adequate protection issue and took it under advisement. The parties filed proposed findings of fact and conclusions of law. This is a core proceeding under 28 U.S.C. § 157(b)(2)(K).

**STATEMENT OF THE CASE**

Debtor owned a particular piece of real estate subject to three liens: Guaranty Bank's fully secured first mortgage, Collins' partially secured second mortgage, and Super Wings' unsecured judgment lien. Debtor had previously

asked the Court for authorization to sell the property free and clear of liens, stating that Guaranty Bank's first mortgage would be paid off, that Collins had agreed to accept $50,000 in exchange for releasing its lien, and that the net sale proceeds would be used to pay Debtor's tax liability arising from the sale.

Super Wings objected to this use of the net sale proceeds. Super Wings argued that the sale proceeds should be used to pay lienholders (like Collins), not Debtor's tax obligations. The Court postponed ruling on how the proceeds at issue would be used and approved the sale, under condition that the net sale proceeds be put in escrow pending ruling. The sale occurred. After paying Guaranty Bank's mortgage and $50,000 to Collins, Debtor put the $287,104.62 in net sale proceeds in escrow.

Super Wings argues that it is entitled to the full $287,104.62 in net sale proceeds because under the express terms of the sale motion and order, Collins released its lien when it received the $50,000 payment.

Debtor and Collins argue that Collins is entitled to the entire $287,104.62 in net sale proceeds held in escrow, not Super Wings. Collins argues that it agreed to release its second position lien on the terms set out in the Sale Motion. Collins notes that the Sale Motion says that the net sale proceeds would be used to pay Debtor's tax obligations. Collins argues that, because the sale proceeds aren't being used to pay Debtor's tax obligations, it has not released its lien.

Debtor argues that Super Wings is not entitled to any adequate protection from the proceeds because Super Wings' lien never actually attached to the real estate because its value was fully encumbered by the first two liens.

The Court agrees with Collins and grants Debtor's Motion for Summary Judgment on Super Wings' Motion for adequate protection.

## BACKGROUND

On April 6, 2015, Debtor filed a Motion for Order Authorizing the Sale of Real Estate Free and Clear of Liens, Claims, and Encumbrances ("Sale Motion"). Debtor proposed to sell real estate located on 3rd Avenue in Cedar Rapids, at a cash sale price of $1,016,000. There were three liens on the 3rd Avenue property: Guaranty Bank's first mortgage, Collins' second mortgage, and Super Wings' judgment lien. The Debtor sought to sell the real estate "free and clear of all liens, claims, encumbrances and interests" and provided that "[a]ny such interests, liens, claims and encumbrances would attach to the proceeds from the sale." The Sale Motion also stated that Collins "agreed to accept $50,000 of the Net Sale Proceeds from the Sale Transaction in exchange for a release of its lien." The Sale Motion also stated that net proceeds would be used to pay Debtor's tax liability arising from the sale.

On April 15, 2015, before the hearing on the sale motion, Collins confirmed by letter that it had "no objection to the sale . . . on the terms described in the

Motion," and had "agreed to accept $50,000 from the Net Sale Proceeds in exchange for a release of its lien against the property."

On April 27, 2015, Super Wings filed an objection to the Sale Motion and a Motion for Adequate Protection.  Super Wings argued that the sale proceeds should not be used to pay Debtor's tax obligations.  Super Wings argued that the money that Debtor set aside to pay the tax arising from the sale should be paid to Collins or Super Wings because they are lienholders.  Super Wings specifically noted that it believed paying Collins would be appropriate because that would reduce a security interest ahead of Super Wings and free up more collateral for Super Wings' lien.

On April 28, 2015, the Court held a hearing on the Sale Motion.  Collins did not appear at that hearing.  The Court heard evidence and argument from Debtor and Super Wings.  The dispute centered on whether the net sale proceeds should be used to pay Debtor's tax obligations, as contemplated in the Motion, or go to pay Collins or Super Wings.  Super Wings argued that, as a lienholder, it was entitled to higher priority than Debtor's tax obligation.  This dispute was not resolved.  The parties concluded that the sale should go forward and agreed that the net sale proceeds would be put in escrow pending resolution of this dispute.

On April 30, 2015, this Court entered an Order granting the Debtor's Motion ("Sale Order").  The Sale Order provided that the "Net Sale Proceeds, after

4

payment of all closing costs . . . and full payment of the secured claim of Guaranty Bank, and partial payment on the secured claim of Collins Community Credit Union in the amount of $50,000.00, will be distributed into counsel for the Debtor's client trust to be held in escrow." The Sale Order also provided that the proceeds from the sale would "be paid in accordance with the Sale Motion and the Court's Order at the Sale Hearing."

The Sale closed. Guaranty Bank was paid $608,305.80. Collins was paid $50,000.00. The net sale proceeds of $287,104.62 were put in escrow.

Debtor later amended his filings, stating that the net sale proceeds should not be used to pay the taxes, but that they should instead be paid to Collins. Collins also filed a resistance to Super Wings Motion for Adequate Protection. Collins argued that the Sale Motion did not contemplate payment to Super Wings. Collins argued that it consented to the sale on the terms set out in the Sale Motion. Collins argued that it should receive any net sale proceeds that are not used for the purposes specifically set forth in the Sale Motion.

There are no disputed facts. This dispute is about whether the net sale proceeds should be paid to Collins or Super Wings.

## DISCUSSION

Debtor argues that Collins is entitled to the proceeds. Debtor argues that Super Wings is not entitled to adequate protection because it did not have an

allowed secured claim. Whether or not Super Wings had a secured claim on the real estate, however, is immaterial. Even if a creditor is completely underwater, its lien survives until, and unless, it is avoided. See Nomellini v. IRS et al. (In re Nomellini), 534 B.R. 166, 170 (Bankr. N.D. Cal. 2015). Even if Super Wings does not hold an "allowed secured claim," its lien has not been avoided. Moreover, the Sale Motion specifically provided that "interests, liens, claims and encumbrances would attach to the proceeds from the sale." Super Wings' lien continued to attach to any proceeds still available after senior liens were paid.

       Thus, the dispositive issue is whether Collins' lien was released or continued to attach to the proceeds. If Collins' lien continued to the proceeds, it is ahead of Super Wings and so is entitled to the proceeds. If Collins' lien did not continue to the proceeds, then Super Wings' lien is the only remaining lien and it is entitled to the proceeds.

       Super Wings argues Collins' lien did not continue to the proceeds. Super Wings argues that, according to the Sale Motion and Order, Collins expressly released its lien on receipt of $50,000. Super Wings concludes that its lien is the only lien remaining on the proceeds.

       Collins argues that its lien continued to the proceeds because its lien release was conditioned on the net sale proceeds being used to pay Debtor's tax obligations. Collins argues that, because the net sale proceeds were not used to

pay Debtor's tax obligations, its lien was never released and thus remains attached to the proceeds.

Resolving whether or not Collins' released its lien requires interpreting the Sale Motion and Sale Order. When interpreting consent decrees, courts "basically look to rules of contract interpretation." United States v. Knote, 29 F.3d 1297, 1299 (8th Cir. 1994) (citing United States v. ITT Cont'l Baking Co., 420 U.S. 223, 238 (1975)). Contracts are interpreted "in accordance with the plain and literal meaning of the language used." Chi., Rock Island & Pac. Ry. Co. v. Md. Cas. Co., 75 F.2d 596, 599 (8th Cir. 1935). "However, even when interpreting the meaning of a consent decree 'as written,' [courts] are not to ignore the context in which the parties were operating, nor the circumstances surrounding the order." Knote, 29 F.3d at 1300 (quoting ITT Cont'l Baking Co., 420 U.S. at 243). Courts should not ignore the context surrounding consent decrees because they are a "peculiar sort of legal instrument that cannot be read in a vacuum." Id. at 1300 (quoting Sennewald v. Univ. of Minn., 847 F.2d 472, 475 (8th Cir. 1988) (Arnold, J., concurring) (internal quotation marks omitted)).

Here, the Court concludes on the undisputed facts that Collins did not release its lien. Collins' agreement to "release its lien" in exchange for $50,000 was a part of larger deal. Although the Sale Motion did state that Collins "agreed to accept $50,000 of the Net Sale Proceeds from the Sale Transaction in exchange

7

for a release of its lien," the Sale Motion also stated that Debtor would use the net sale proceeds to pay his tax liability arising from the sale. Collins later confirmed by letter that it had "no objection to the sale . . . on the terms described in the Motion." Because the net sale proceeds were not used to pay Debtor's tax liability—as contemplated in the Sale Motion—Collins did not release its lien. Super Wings' argument that Collins unconditionally released its lien in exchange for $50,000 relies on reading the release language in a vacuum and ignores the larger context of the consent order.

## CONCLUSION

**WHEREFORE**, Debtor's Motion for Summary Judgment is GRANTED.

**FURTHER**, Super Wings' Motion for Adequate Protection is DENIED.

**FURTHER**, Super Wings' Motion to Strike is DENIED AS MOOT.

Dated and Entered: May 12, 2016

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE