IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| JODY L. KEENER ) | |
| ) | Bankruptcy No. 14-1169 |
| Debtor. ) | |

**RULING ON SUPER WINGS' MOTION TO CONVERT**

This matter came on for hearing on October 18, 2017 in Cedar Rapids, Iowa. Robert Ginn and Rush Shortley appeared for Debtor Jody Keener. Kevin Collins appeared for Debtor's companies, specifically Alpha International, JK Properties, and JK Manufacturing. Eric Lam appeared for Creditor Super Wings International ("Super Wings"). Jeff Taylor appeared with and for Chapter 11 Trustee Renee Hanrahan ("Trustee"). The Court received evidence and heard argument. The parties filed briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2).

**STATEMENT OF THE CASE**

Under a mediated settlement stipulation between Debtor and Super Wings, this Court appointed a Chapter 11 trustee who is to liquidate estate assets in a specific sequence to pay creditors. Super Wings believes further events have occurred which now make it necessary to convert this case to Chapter 7. Super Wings argues the estate is declining in value, Debtor made inappropriate transactions with estate assets, and Debtor failed to timely pay real estate taxes. Super Wings argues these events, among others, constitute cause to convert. Super

Wings also argues that a Chapter 7 Trustee would be able to liquidate the estate more easily because the liquidation sequence in the mediated stipulation would not apply in a Chapter 7.

Debtor argues that there is no cause to convert. Debtor argues that the major decline in value of the estate resulted from this Court's rulings, not his conduct, that the transactions between his companies were appropriate and did not reduce the value in the estate, and that his failure to pay taxes timely was not material and merely resulted in delay in payment, not a total failure to pay. Debtor further argues that Super Wings is inappropriately trying to get around the liquidation sequence set out in the mediated stipulation.

## BACKGROUND AND FINDINGS OF FACT

In June 2016, Debtor and Super Wings entered into a mediated stipulation under which Debtor agreed to pay Super Wings $3.7 million through a series of payments by the end of 2016. The mediated stipulation provided that if Debtor failed to timely pay Super Wings in full then the Court would appoint a Chapter 11 Trustee. The Chapter 11 Trustee would then liquidate Debtor's estate in a specific sequence. In particular, the mediated stipulation provided that:

> the priority of **liquidation** of assets by the Chapter 11 Trustee shall be in the following order: First, the Debtors real property owned in Cedar Rapids, Iowa; second the real property located at 845 Wave Street, Monterey, California; third, specific items of assets owned by the Debtor's wholly-owned corporate entities – J. Lloyd International Corp., JK Manufacturing Co., Alpha International, Inc., Closeouts

2

> Unlimited, Inc., Retro Images, Inc., and JK Properties, LLC; and finally, the economic interest and membership interest represented by the shares of stock owned by the Debtor in his wholly-owned corporate entities and limited liability companies.

Doc. 785 at 7–8 (emphasis added). The Court approved the mediated stipulation and the later amended stipulation.

Debtor eventually defaulted on his responsibility to pay under the amended stipulation. Accordingly, on April 5, 2017, the Court appointed a Chapter 11 Trustee as the stipulation provided. Renee Hanrahan, an experienced lawyer and bankruptcy trustee, now serves as Chapter 11 Trustee.

When the Court appointed Trustee, JK Properties (one of Debtor's wholly owned companies) owned 3100 Blue Ridge in Cedar Rapids. Debtor facilitated the sale of this property in June 2017. It was Cedar Rapids property and so included in the assets that Trustee was to liquidate first under the amended stipulation. Debtor and Trustee agreed that the bankruptcy estate would receive about $200,000 in net proceeds from the sale of this real estate. Debtor later paid Trustee only $186,000. Trustee did not receive the full $200,000 because, according to Debtor, part of the purchase price was for furniture that was not property of the estate. Debtor paid $15,000 from the home sale proceeds to his ex-wife, Cecilia Ng for the furniture.

Also soon after her appointment, Trustee learned that Debtor had not paid a March 2017 property tax installment payment on some real estate that he owned. In June 2017, Trustee paid those March property taxes with a $50,000 distribution

she received from Debtor from his interest in Alpha International (one of his many companies). That tax payment included interest and penalties for late payment.

On August 3, 2017, JK Properties, another of Debtor's companies, received $250,000 from Alpha International. No one told Trustee about this transfer. No one asked for permission to make this transfer. Trustee has not seen a promissory note evidencing an accompanying obligation with this transfer.

Debtor testified that JK Properties needed this $250,000 transfer to complete the sale of real estate that JK Properties owned in California. The California property is in the second category of property that the Chapter 11 Trustee is to liquidate under the stipulation. According to Debtor, JK Properties needed this money to refinance the debt he owed or to otherwise prepare the property for sale. Debtor expects the sale to close in April 2018 and provide about $1.5 million to the bankruptcy estate. Debtor claims that the $250,000 refinancing money paid as a part of the sale will result in significantly more money for the estate.

After explaining these specific transactions, Debtor's testimony became inconsistent and confusing. For example, Super Wings noted that these transactions between his companies took place despite the fact that Alpha International apparently owed Debtor over $700,000 when he filed bankruptcy. Debtor's testimony was unclear about how he and his companies record these transactions. Questions remain whether these transactions were paying off debts

between companies or creating a new debt between Alpha and JK Properties. Debtor had no idea how much money Alpha currently owed him, how the companies were recording these transactions, or why financial documents in the record said what they did. Debtor does not seem to believe that any of this really matters because he owns the companies.

In light of these financial irregularities and her responsibilities to the estate, Trustee has repeatedly requested financial information about Alpha International, JK Properties, and JK Manufacturing—all wholly owned by Debtor. Trustee has not received information that would give her a complete picture of the companies' finances. Although Trustee has received financial statements for Alpha International, J. Lloyd International (another of Debtor's companies), and JK Manufacturing Co, there is a disclaimer at the bottom of these financial statements: "No Assurance Provided / All Disclosures Omitted." Trustee understands this disclaimer to mean that the financial information in the documents is not final and that no one should rely on it. Trustee has not received financial information apart from these documents. Trustee has thus not been able to verify their accuracy, but likewise cannot say that they are inaccurate.

Trustee also received a $200,000 check from Alpha International. On the memo line, the check says that it is for a "Loan to Jody Keener." The letter that accompanied the check says that the money is "for the benefit of the Jody Keener

Bankruptcy estate." Trustee has not cashed this check because it says it is a "loan." Trustee has never asked to borrow money for the estate and has no authority to do so.

Trustee also stated that she does not intend to file a Chapter 11 plan because the bankruptcy estate does not have enough money to support a plan. The bankruptcy estate has only $141,641.87 and could not fund a plan to pay the debts outlined in the stipulation and other filed claims.

The mediated stipulation specifically provides that Debtor will file a plan as soon as practicable. The mediated stipulation contemplated Debtor and Super Wings working together to potentially agree to a plan. This has not occurred. Super Wings argues that the lack of a plan is a failure on Debtor's part. Debtor argues that it is Super Wings' failure to work with him to develop a plan.

If the Court were to convert the case to Chapter 7 and appoint Trustee Hanrahan Chapter 7 Trustee, she testified that she would move to take control and liquidate all of Debtor's assets in the most expeditious way to fund the estate liabilities. She testified she likely would sell Debtor's valuable interest in his companies, liquidate his bank accounts, and sell his rights under various contracts. In particular, Trustee noted that would likely sell a valuable contract that alone would perhaps satisfy all claims in this case. Currently, however, Trustee is not able to liquidate Debtor's assets in this fashion because the liquidation sequence

6

set out in the mediated stipulation stops her from doing so.  She must sell property according to the liquidation sequence, which does not reach the assets she would sell in Chapter 7 until she liquidates other property first.  Debtor believes that the mediated stipulation governs and the liquidation sequence under that agreement is working just fine.

## CONCLUSIONS OF LAW AND ANALYSIS

The Bankruptcy Code provides:

[O]n request of a party in interest, and after notice and a hearing, **the court shall convert a case under this chapter to a case under chapter 7** or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

(2)**The court may not convert a case** under this chapter to a case under chapter 7 or dismiss a case under this chapter **if the court finds and specifically identifies unusual circumstances** establishing that converting or dismissing the case is not in the best interests of creditors and the estate, **and** the debtor or any other party in interest establishes that—

(A) **there is a reasonable likelihood that a plan will be confirmed** within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; **and**
(B) **the grounds for converting** or dismissing the case **include an act or omission of the debtor** other than under paragraph (4)(A)--
(i) **for which there exists a reasonable justification** for the act or omission; **and**
(ii) **that will be cured within a reasonable period of time** fixed by the court.

11 U.S.C. § 1112(b) (emphasis added).  Thus, if the Court finds "cause" then the burden shifts to the objecting party to show "unusual circumstances" such that conversion or dismissal is not in creditors' best interest, along with other facts.  Id.

Here, the parties dispute only whether there is "cause" to convert.  Debtor does not argue that there are unusual circumstances, a reasonable likelihood of confirmation, or any other factor under § 1112(b)(2) in this case such that the case should not be converted even if there is cause.  As a result, if the Court finds "cause" in this case, then conversion is mandatory:

> Prior to the 2005 amendments to the Bankruptcy Code, most courts held that a bankruptcy court has broad discretion under § 1112(b) to either dismiss a case or convert it from Chapter 11 to Chapter 7.
>
> **Following BAPCPA's 2005 amendments to the Bankruptcy Code, section 1112(b)(1) is no longer permissive, but instead mandates conversion or dismissal if the movant establishes exclusive cause**, and no unusual circumstances establish that conversion or dismissal is not in the best interest of creditors.

In re Miell, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009) (citations omitted) (emphasis added) (quoting In re New Towne Dev., LLC, 404 B.R. 140, 146 (Bankr. M.D. La. 2009)).

Although conversion is mandatory if courts find "cause," "courts enjoy wide latitude in determining whether cause exists in a bankruptcy case." In re Shea, Ltd., 545 B.R. 529, 535 (Bankr. S.D. Tex. 2016); In re Morningstar Marketplace, Ltd, 544 B.R. 297, 303 (Bankr. M.D. Pa. 2016) ("[A] bankruptcy court has wide

8

discretion to determine whether specific conduct establishes cause."); see also In re Hassen Imps. P'ship, No. BAP CC-13-1019-KIPAD, 2013 WL 4428508, at *12 (B.A.P. 9th Cir. Aug. 19, 2013) (same); In re Davis-Rodwell TMC LLC, No. 12-04499-8-RDD, 2013 WL 6134532, at *3 (Bankr. E.D.N.C. Nov. 21, 2013) (same); In re Consol. Distribs., Inc., No. 13-40350 (NHL), 2013 WL 3929851, at *7 (Bankr. E.D.N.Y. July 23, 2013) (same).

The Code sets out a number of statutory "causes" to convert or dismiss including, as relevant here: "substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation" and "failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." 11 U.S.C. § 1112(b)(4). "The statutory list of 'causes' is not exhaustive." In re Keeley & Grabanski Land P'ship, 460 B.R. 520, 536 (Bankr. D.N.D. 2011). "A court may consider other factors and equitable considerations in making the decision on conversion." Id. "[T]he movants have the initial burden to establish cause for conversion." Id. at 539.

## I.   Diminution of the Estate

Super Wings notes that in the six months since the Court appointed Trustee Debtor paid $15,000 to his ex-spouse, made monthly payments to others, shuffled money between his companies without permission, but has not paid his creditors, or filed a plan. Super Wings also notes that, based on Debtor's monthly reports,

9

the value of estate has declined about $20 million since 2014. Super Wings argues that all of these facts taken together show improper financial dealings with Debtor and his companies and diminution of the estate and are cause to convert the case to Chapter 7.

Debtor argues that the decline in value of the estate is primarily the result of this Court's ruling that $15 million in toy molds was not property of the estate. Debtor also notes that there have been a few valuation adjustments for some of Debtor's real estate. He also argues that the $250,000 transfer from Alpha to JK Properties simply transferred value within estate assets such that there was no net change in value to the estate.

Debtor also argues that he has provided accurate financial information from his companies. Debtor notes that there is substantial value in the estate to pay all creditors. Debtor concludes that he and his companies' financial activities set out in the record are proper, do not show diminution of the estate, and do not constitute cause to convert.

Here, the Court first finds that Super Wings has not met its burden to show substantial or continuing loss to or diminution of the estate. Although Debtor's monthly reports do show a substantial loss in value, the Court is persuaded by Debtor's arguments that the majority of this decline was the result of this Court's ruling that $15 million in toy molds are not property of the estate. Likewise,

valuation adjustments in real estate based on appraisals and changing circumstances account for the other decline in value on paper. Similarly, the $250,000 transfer from Alpha to JK Properties adjusted value on paper—Debtor moved value from one wholly owned entity to another in order to facilitate liquidation of real estate. The Court cannot say that these facts show substantial loss to the estate.

In general, the evidence on Debtor's and his companies' financial dealings show that Debtor continues to transfer money freely between his companies. This is not new. In a ruling denying conversion in 2015, this Court noted that Debtor "routinely moved money in and out of companies, and between them, as cash flow needs dictated." Doc. 535 at 14. This practice has continued since that ruling and since the Court appointed Trustee. There is, however, on this record, no evidence of self-dealing with respect to the specific transactions Super Wings brings up here—with one possible exception.

The $200,000 check made out from Alpha to the Chapter 11 Trustee for Debtor's bankruptcy raises real concerns. This check purports to be a "loan" to Debtor Jody Keener. Debtor produced no evidence this was a loan. Debtor had no authority to borrow money. Debtor testified, however, that this was just a way of accounting for the money, which essentially functioned as a dividend.

The Court takes Debtor and his testimony at face value and finds that there was no loan from Alpha to Debtor. The Court finds that the $200,000 check represents a dividend to Debtor from Alpha. The Court directs Alpha, through Debtor as sole owner of Alpha, to reissue the check as a dividend to Keener and payable to Chapter 11 Trustee. Debtor has 7 days to have said check reissued. If Debtor through Alpha does not reissue the check in 7 days, the Court will find "cause" and order the case converted to Chapter 7.

If Debtor complies with the above paragraphs, then the Court finds that there is no evidence that Debtor has engaged in transactions that harmed the estate. Although the Court continues to have doubts about Debtor's credibility, it will not impute an improper or fraudulent basis for these transactions where there is no supporting evidence.

With the conditions outlined above, the Court finds there has not been substantial or continuing loss to or diminution of the estate in this case such that there is "cause" to convert the case to Chapter 7.

## II.    Failure to Timely Pay Taxes

Super Wings also argues that Debtor's failure to timely pay his real estate taxes constitutes cause to convert. Super Wings notes that there is no dispute that Debtor did not make his March 2017 property tax payment on time. Super Wings' argument relies on a strict application of § 1112(b)(4), which says that "cause"

includes: "failure timely to pay taxes owed after the date of the order for relief or to file tax returns due after the date of the order for relief." 11 U.S.C. § 1112(b)(4). Super Wings concludes that on the undisputed facts this ground, standing alone, is cause to convert.

Debtor acknowledges that the March 2017 real estate tax payment was late. He argues that there are minimizing circumstances. He notes that Court appointed the Trustee around that time the taxes were due, that he quickly provided funds to Chapter 11 Trustee to pay the real estate taxes after she took over, and that the taxes are no longer due.

Super Wings responds that these arguments go to whether there are "unusual circumstances" or "reasonable justification" for the failure, not whether Debtor's late tax payment is "cause." Super Wings argues that Debtor cannot show all the factors needed to show "unusual circumstances" and avoid conversion.

The Court disagrees with Super Wings' strict application of this ground for conversion. Other courts have found that:

> A materiality standard should be applied when assessing whether cause exists under the enumerated grounds that constitute cause under § 1112(b)(4). Not applying a materiality standard to the enumerated grounds would undermine the fundamental purposes of chapter 11. For example, it is common sense that a chapter 11 case should not be converted or dismissed under § 1112(b)(4)(F) or § 1112(b)(4)(I) if a debtor in possession that is generally discharging its duties files a monthly operating report a few days late, even if without just excuse, or pays a post-petition tax a day late.

13

In re Melendez Concrete Inc., No. 11-09-12334 JA, 2009 WL 2997920, at *5 (Bankr. D.N.M. Sept. 15, 2009); see also Deangelis v. KC's Pub, LLC (In re KC's Pub, LLC), 428 B.R. 612, 618 (Bankr. M.D. Pa. 2010) (applying Melendez Concrete Inc.'s materiality standard and finding that Debtor's lack of dram shop insurance was not material); In re Davis-Rodwell TMC LLC, No. 12-04499-8-RDD, 2013 WL 6134532, at *3 (Bankr. E.D.N.C. Nov. 21, 2013) (finding that, where the Court ordered Debtor to provide letter of intent "on or before October 10" and "Debtor provided the Letter of Intent nine hours late on October 11, 2013 at 9:00 a.m." it was not cause to convert because it was "not a material default").

The Court relies on this authority and finds that Debtor's failure to pay his March 2017 property tax on time is not "cause" because it was not material. The taxes are no longer due, Trustee paid them soon after they were due, and the record is silent on the amount of the penalty and late payment that was assessed.

### III. Other Factors and Equitable Considerations

The Court notes that in exercising its wide discretion in determining whether there is cause to convert this case it "may consider other factors and equitable considerations in making the decision on conversion." In re Keeley & Grabanski Land P'ship, 460 B.R. at 536. Super Wings has argued that the Court should consider the totality of the circumstances—including the delays, lack of cooperation, and lack of clarity in Debtor's finances—and find cause to convert.

14

Debtor disagrees and affirmatively argues that appointment of a Chapter 11 Trustee and the accompanying liquidation sequence was the bargained-for remedy for his default under the mediated stipulation. Debtor argues that the mediated stipulation provides Trustee with the power to liquidate and pay creditors, but simply sets out a required sequence of sales that the parties agreed to. Debtor argues that Super Wings' motion to convert is an improper attempt to circumvent the mediated stipulation.

Super Wings responds that it did not waive its ability to move for conversion to Chapter 7 simply by signing the mediated stipulation. Super Wings argues that Debtor has slow-played the liquidation sequence and that Debtor's lack of cooperation and a lack of offers has hamstrung her efforts to proceed through that sequence. Super Wings notes that if the Court converts the case to Chapter 7, the Trustee would not be so bound and could liquidate the estate as she sees fit. Super Wings further argues that conversion would benefit all creditors. Super Wings argues that all of the facts taken together constitute cause to convert to Chapter 7.

The Court will consider presence of the stipulation, its liquidation provisions, and the background of this entire case in deciding whether "cause" exists here. The mediated stipulation and the fact that the Court has appointed a Trustee are considerations that color the entire record and weigh against a finding of "cause." The mediated stipulation provided a remedy for Debtor's nonpayment

through the appointment of a trustee and direction on the order in which Trustee could liquidate estate assets. That remedy is now in place. The Court is hesitant to supplant that bargained-for remedy on the present record.

As the Court noted at the hearing, Trustee may liquidate as expeditiously in this Chapter 11 as in a Chapter 7. The Court noted that there was absolutely no prohibition on Chapter 11 Trustee engaging in normal bankruptcy liquidation techniques including <u>auction</u>. If the initial properties in the liquidation sequence do not produce sufficient value, the Trustee will simply proceed until she receives sufficient value. Trustee testified that one particular item later on in the sequence might pay creditors in full. If the earlier items liquidated in this bankruptcy do not cover these costs, Debtor will lose that valuable right (and all the property liquidated before it) under the very liquidation sequence he wants to keep in place. Debtor continues to have every incentive for Trustee to get strong sale prices.

Moreover, the Court noted very clearly at the hearing that if it denies conversion on this motion, such denial would be without prejudice. Trustee or Super Wings may seek conversion again at any time. The Court remains very skeptical of Debtor's testimony and approach to payment of his debts in this case. This is functionally Debtor's last chance to proceed in Chapter 11.

## CONCLUSION

**WHEREFORE**, Super Wings' Motion to Motion to Convert is DENIED, conditioned on Debtor's compliance with the directions on reissue of check to the Trustee.

Dated and Entered: November 2, 2017

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE