IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: ) | |
| ) | Chapter 11 |
| JODY L. KEENER ) | |
| ) | Bankruptcy No. 14-01169 |
| Debtor. ) | |

**RULING ON SUPER WINGS' MOTION TO CONVERT**

This matter came on for telephonic hearing on March 26, 2018. Robert Ginn and Robert Gainer appeared for Debtor Jody Keener ("Debtor"). Eric Lam appeared for Creditor Super Wings International ("Super Wings"). Jeff Taylor appeared with and for Chapter 11 Trustee Renee Hanrahan ("Trustee"). Before the hearing, the parties agreed to a telephonic hearing, that no witnesses would testify, and that Super Wings' exhibits would be admitted into evidence without objection. The Court received Super Wings' exhibits and heard argument. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

**STATEMENT OF THE CASE**

Super Wings seeks to convert this case to Chapter 7. Super Wings argues that there is cause to convert the case because Debtor has not complied with an Order from this Court and has not filed a plan. Super Wings also argues that other factors and equitable considerations warrant conversion. Debtor argues that conversion is not appropriate because he has followed the Court's Order and is ready to file a plan of reorganization. Trustee argues that Debtor has not complied

with her efforts to follow the liquidation sequence set out in the mediated stipulation.

## BACKGROUND, FACTS, AND ARGUMENTS

This case has a long history. It was original filed as an Involuntary Chapter 7 case in July 2013. Debtor filed a voluntary Chapter 11 in July 2014. There have been nearly 1200 docket entries and substantial litigation on a myriad of issues, including confirmation. In June 2016, after much of the litigation, Debtor and Super Wings entered into a mediated stipulation in an attempt to bring resolution to this case. Debtor agreed to pay Super Wings $3.7 million through a series of payments by the end of 2016. If Debtor failed to timely pay Super Wings in full then the Court would appoint a Chapter 11 Trustee. The Chapter 11 Trustee would then liquidate Debtor's estate in a specific sequence set out in the stipulation.

Debtor eventually defaulted on his agreement to pay under the mediated stipulation. On April 5, 2017, the Court appointed Renee Hanrahan, an experienced lawyer and bankruptcy trustee, to serve as Chapter 11 Trustee.

A few months after the Court appointed the Chapter 11 Trustee, Super Wings filed a motion to convert the case to Chapter 7. In general, Super Wings argued that Debtor had made inappropriate transactions with estate assets and failed to timely pay real estate taxes. Debtor responded that Super Wings was improperly attempting to get around the bargained-for liquidation sequence set out

in the mediated stipulation. In general, the record showed Debtor's delays, lack of cooperation, and lack of transparency in his finances and those of his solely owned companies. In particular, the record showed that Debtor was slow playing the liquidation sequence and not cooperating with Trustee's efforts to follow it. Trustee joined Super Wings' Motion to Convert.

In spite of this record of continuing financial confusion and noncooperation, the Court found that there was not "cause" to convert and denied the motion. In re Keener, Bankr. No. 14-1169, 2017 WL 5054313, at *7 (Bankr. N.D. Iowa Nov. 2, 2017). In doing so, the Court stated:

> The Court will consider presence of the stipulation, its liquidation provisions, and the background of this entire case in deciding whether "cause" exists here. The mediated stipulation and the fact that the Court has appointed a Trustee are considerations that color the entire record and weigh against a finding of "cause." The mediated stipulation provided a remedy for Debtor's nonpayment through the appointment of a trustee and direction on the order in which Trustee could liquidate estate assets. That remedy is now in place. The Court is hesitant to supplant that bargained-for remedy on the present record.

Id. The Court noted, however, that the liquidation sequence set out in the mediated stipulation was just that: a liquidation. The Court noted that "there was absolutely no prohibition on Chapter 11 Trustee engaging in normal bankruptcy liquidation techniques including auction" in order to move expeditiously through the liquidation sequence. Id. The Court did not find, however, that the existence of

3

the mediated stipulation was a bar to converting the case to Chapter 7. In fact, the Court reiterated statements made at the hearing:

> [T]he Court noted very clearly at the hearing that if it denies conversion on this motion, such denial would be without prejudice. Trustee or Super Wings may seek conversion again at any time. The Court remains very skeptical of Debtor's testimony and approach to payment of his debts in this case. This is functionally Debtor's last chance to proceed in Chapter 11.

Id.

Super Wings has now sought conversion again. Super Wings bases its motion on the entire record and the following additional facts:

In summer 2017, Alpha International (one of Debtor's solely owned companies) entered into a licensing agreement with Alex Toys, LLC. This transaction involved what has been referred to as Debtor's valuable rights under the "Big Wheel Contract." Alpha received a very large payment under the Contract at the time it was signed. On January 3, 2018, as a part of that agreement, Alpha received an additional $250,000.

The existence of the Contract between Alpha and Alex Toys (relating to the Big Wheel Contract) and payments made under it had not previously been fully disclosed to the Court or other interested parties. Super Wings has referred to this as a "secret contract" and requested Court approval of the agreement and Court ordered disclosure of payments received. Alpha, for all intent and purposes, is the

4

only company that provides revenue to Debtor. On January 10, 2018, the Court entered the following Order, which provides in relevant part that:

> 2.  Any transaction (be it lease, assignment, sale, or otherwise) involving the so called "Big Wheel contract" held by the Debtor's solely-owned entity Alpha International, Inc. must be approved by the Chapter 11 Trustee (or any subsequently appointed Trustee) and this Court, pursuant to notice and hearing. Any and all proceeds of such a transaction henceforth must be deposited into the Chapter 11 Trustee's (or any subsequently appointed Trustee) account.
> . . . .
> 4.  Debtor is prohibited from making any cash withdrawals from any of his solely-owned companies (described above) or from transferring any cash or funds to any relative, associate, affiliate or third party in any amount.

Interim Order re Motion to Lift Stay, In re Keener, Bankr. No. 14-1169 (Doc 987), at 1–2 (Bankr. N.D. Iowa January 10, 2018) (hereinafter "the Order").

On January 23, 2018, Alpha sent $15,000 to Margaret Wong, the sister of Debtor's former spouse. Alpha also sent $51,000 to JK Manufacturing (another one of Debtor's wholly owned companies) on February 7, 2018. Super Wings points out these payments are not to Debtor's bankruptcy creditors. They have been authorized by Debtor from Alpha, even though Alpha owes Debtor over $700,000. Super Wings suggests Debtor is funneling cash to non-creditors and away from his bankruptcy estate.

Super Wings also produced uncontroverted evidence of Debtor's intent to escape the restrictions of bankruptcy. On February 22, 2018, Debtor sent a series of text messages to Dora Yip that reflect these intentions. Dora Yip is the sister of

Tim Yip, who is the principal of Super Wings. See Super Wings Int'l, Ltd. v. J. Lloyd Int'l, Inc., 701 F.3d 870, 872 (8th Cir. 2012) (for background information on relationships of parties and the functioning of Debtor's companies). Those messages show Debtor proposes firing his attorney, bypassing Trustee and administrative bankruptcy expenses, and paying only Super Wings directly. Debtor also states that Trustee is asking for a tax audit, and suggests that if he pays Super Wings directly, the Trustee will not have authority to get a tax audit. Debtor specifically notes that, if he can pay Super Wings directly, he may be able to avoid paying the administrative claim of his previous lawyer, along with Trustee's fees. Debtor also notes that he fired his previous lawyer and that he likewise could fire his current lawyer. The Court agrees with Super Wings and finds these text messages illustrate Debtor's lack of regard for the requirements, protections, and responsibilities of Chapter 11.

Super Wing's motion to convert argues Debtor failed to comply with paragraphs 2 and 4 of the January 10, 2018 Order by: (1) failing to get court approval of an agreement with Alex Toys, LLC and failing to send money from that contract to the Trustee as required by paragraph two; and (2) sending $15,000 from Alpha to Margaret Wong and $51,000 from Alpha to JK Manufacturing, both non-creditors in this bankruptcy — in violation of paragraph four of the Order. Super Wings also argues that Debtor has failed to file a plan and disclosure

6

statement in the time fixed by prior Order of the Court.  Super Wings notes that the mediated stipulation, which the parties entered and the Court approved by order into almost two years ago, says that Debtor will file a plan and disclosure statement "as soon as practicable."  Debtor has not done so.  Super Wings also argues that the text messages from Debtor to Dora Yip provides further "cause" and show that Debtor does not belong in Chapter 11.  Super Wings notes that neither the United States Trustee nor any creditors in this case have objected to the motion.  Super Wings asserts that the above reasons, coupled with the entire history of the case, requires conversion.

    Debtor does not dispute any of the underlying facts that Super Wings relies on for its motion.  Debtors argues that these facts do not warrant conversion.  Debtor argues that between himself, counsel for his companies, and the Trustee, they could not figure out who should seek the Court's approval of the agreement with Alex Toys, LLC as required by paragraph two.  Debtor states that all parties now know about the contract.  Debtor also argues that the funds received from Alex Toys on January 3, 2018 were not under the purview of the Order because they were received before the Order was entered on January 10, 2018.  Debtor further notes that the Order requires "proceeds of such a transaction **henceforth** must be deposited into the Chapter 11 Trustee's . . . account."  The Order at 2.  Debtor also argues that Alpha is the only revenue generating entity, so it is the only

7

source from which to make payments in the settlement stipulation. Debtor argues that he has disclosed all the disputed payments to the Trustee.

Debtor argues that he has done everything he said he would do and has been working with Trustee to work through the liquidation sequence. Finally, Debtor argues that he is ready to file a plan of reorganization and he would not have a problem with the Court setting a firm date by which he must file a plan, "if that would provide comfort to other parties in interest." Docket No. 1033. Debtor's position is that the appropriate way for this case to move forward is with a plan of reorganization, not by converting to Chapter 7.

Trustee does not oppose Super Wings' Motion. Trustee does dispute Debtor's assertion that he has been compliant with her efforts to follow the liquidation sequence set out in the mediated stipulation. Trustee believes the opposite to be true. Trustee pointed to the fact that she recently filed a motion to compel Debtor to remove himself and his family from certain real estate in order to sell the property. Trustee stated that this was yet another example of how the Debtor does not comply with Trustee or other requirements imposed on him unless and until the Court orders him to do so. Trustee is frustrated by Alpha simply making distributions of cash and then finding out about those transactions in a subsequent report. Trustee argues that the transactions at issue here are examples

of how Debtor has operated in this case since her appointment—doing what he wants without regard for the fact that he is in a Chapter 11.

Trustee notes that, in the Court's most recent ruling on Super Wings' previous motion to convert, the Court gave clear guidance to Trustee to march through the liquidation sequence set out in the mediated stipulation. Trustee states that she has been following that guidance and working through the sequence. After the hearing, Trustee filed a clarification of her position and stated that, if the Court converts the case to a Chapter 7, then she believes the mediated stipulation would not bind her (if appointed in the Chapter 7) in her liquidation of Debtor's property.

## CONCLUSIONS OF LAW AND ANALYSIS

The Bankruptcy Code provides:

> [O]n request of a party in interest, and after notice and a hearing, **the court shall convert a case under this chapter to a case under chapter 7** or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **for cause** unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.
>
> (2) **The court may not convert a case** under this chapter to a case under chapter 7 or dismiss a case under this chapter **if the court finds and specifically identifies unusual circumstances** establishing that converting or dismissing the case is not in the best interests of creditors and the estate, **and** the debtor or any other party in interest establishes that—
>
> (A) **there is a reasonable likelihood that a plan will be confirmed** within the timeframes established in sections 1121(e) and 1129(e) of

> this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) **the grounds for converting** or dismissing the case **include an act or omission of the debtor** other than under paragraph (4)(A)—
>
> (i) for which there exists a **reasonable justification** for the act or omission; and
>
> (ii) that **will be cured** within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b) (emphasis added). "Thus, if the Court finds 'cause' then the burden shifts to the objecting party to show 'unusual circumstances' such that conversion or dismissal is not in creditors' best interest, along with other facts." In re Keener, Bankr. No. 14-1169, 2017 WL 5054313, at *4 (Bankr. N.D. Iowa Nov. 2, 2017).

Here, Debtor does not argue that there are unusual circumstances to account for. He disputes only whether there is "cause" to convert. If there is "cause" to convert the case, then the Court must convert the case:

> Prior to the 2005 amendments to the Bankruptcy Code, most courts held that a bankruptcy court has broad discretion under § 1112(b) to either dismiss a case or convert it from Chapter 11 to Chapter 7. **Following BAPCPA's 2005 amendments to the Bankruptcy Code, section 1112(b)(1) is no longer permissive, but instead mandates conversion or dismissal if the movant establishes exclusive cause**, and no unusual circumstances establish that conversion or dismissal is not in the best interest of creditors.

Id. at *4 (internal quotation marks omitted) (emphasis added) (quoting In re Miell, 419 B.R. 357, 366 (Bankr. N.D. Iowa 2009). "Although conversion is mandatory

10

if courts find 'cause,' courts enjoy wide latitude in determining whether cause exists in a bankruptcy case." Id. (internal quotation marks omitted) (collecting cases).

The Bankruptcy Code sets out a list of "causes" to convert, including "failure to comply with an order of the court," § 1112(b)(4)(E), and "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed . . . by order of the court." § 1112(b)(4)(J). "The statutory list of 'causes' is not exhaustive. A court may consider other factors and equitable considerations in making the decision on conversion." In re Keener, 2017 WL 5054313, at *4 (internal quotation marks omitted) (quoting In re Keeley & Grabanski Land P'ship, 460 B.R. 520, 536 (Bankr. D.N.D. 2011)). Super Wings has the burden to show cause for conversion. See id.

### I. Failure to Comply with an Order of the Court

A. Paragraph Two

Paragraph two of the Order provides:

> 2. Any transaction (be it lease, assignment, sale, or otherwise) involving the so called "Big Wheel contract" held by the Debtor's solely-owned entity Alpha International, Inc. must be approved by the Chapter 11 Trustee (or any subsequently appointed Trustee) and this Court, pursuant to notice and hearing. Any and all proceeds of such a transaction henceforth must be deposited into the Chapter 11 Trustee's (or any subsequently appointed Trustee) account.

11

January 10, 2010 Order at 1.  Super Wings argues that Debtor has failed to comply with this paragraph because he has not even filed for approval of the license agreement with Alex Toys, LLC.  Super Wings further argues that Debtor has not remitted the $250,000 in contract proceeds to the Trustee as required by this paragraph.

Super Wings argues that Debtor has failed to comply with paragraph two and paragraph four of the Court's Order of January 10, 2018.  The Court will address each of these paragraphs separately.

Debtor argues that he has complied with the Order.  Debtor argues that he, in consultation with his corporate counsel and with Trustee, was never sure who—himself, Alpha International, or Trustee—was to seek such approval.  Debtor argues that all parties know about the contract.  Debtor further argues that he did not have to remit the $250,000 received by Alpha on January 3, 2018 to Trustee.  Debtor notes that the January 10 Order says "proceeds of such a transaction **henceforth** must be deposited."  Debtor notes that he received the proceeds on January 3 and the Court entered the Order on January 10.  Debtor concludes that he has complied with the Order.

The Court finds that it is unclear whether Debtor has fully complied with paragraph two of the Order.  Debtor is technically correct that the Order does not specify whether Debtor or Trustee should seek approval of the agreement with

12

Alex Toys. Super Wings' position that Debtor needed to move for approval of the agreement is probably what was intended by the language of the Order. However, the fact the Order does not specify who should seek approval of the agreement leaves the issue at least somewhat unclear.

Similarly, Debtor correctly notes that the Order requires Alpha to remit proceeds from the contract "henceforth"—which would indicate a time after the Court entered the Order. While the Order seemingly intended to have all money in possession and all money henceforth received paid over—the Order lacks some clarity and could fairly be read by Debtor as he suggests.

### B. Paragraph Four

Paragraph four of the Order provides:

> 4. Debtor is prohibited from making any cash withdrawals from any of his solely-owned companies (described above) or from transferring any cash or funds to any relative, associate, affiliate or third party in any amount.

Id. Super Wings argues that Debtor caused $51,000 to be sent from Alpha to JK Manufacturing and $15,000 to be sent from Alpha to Margaret Wong, both in violation of paragraph 4 of the Order. Super Wings argues that this failure to comply with the Order is "cause" to convert the case.

Debtor argues that Alpha is the only revenue generating entity that Debtor owns and thus the only source from which he can make any payments needed by

him or his companies.  Debtor points out that he has disclosed both the disputed payments to the Trustee and was not hiding anything.

The Court finds first that the $51,000 transfer from Alpha to JK Manufacturing did not violate the Order.  Paragraph four provides that Debtor was prohibited from making transfers "to any relative, associate, affiliate or third party."  JK Manufacturing is Debtor's solely owned company but does not appear to fall under the terms "relative, associate, affiliate or third party."  Transfer from Alpha to JK Manufacturing would more properly be categorized as an "inter-company or inter-entity transfer," as contemplated in the language in paragraph three of the Order.  Paragraph three states that "any withdrawal of expenditure or inter-company or inter-entity transfers, in an amount exceeding $5,000, from the Debtor's bank account . . . or from any account of any of the Debtor's soley-held entity . . . must be reported by the Debtor to the Chapter 11 Trustee . . . ." Id. at 1–2.  Debtor asserts that he has reported all transfers to the Trustee.  Super Wings has not argued otherwise.  The Court finds that the $51,000 transfer from Alpha to JK Manufacturing did not, on the face, violate the Order.

The Court does find, however, that the $15,000 transfer from Alpha to Margaret Wong violated paragraph four of the Order.  Debtor's argument that Alpha is the sole revenue generating entity, and so the only entity able to make payments, does not address the core issue: whether the transfer violated the Court's

Order.  Debtor provides no argument showing this transfer complied with paragraph four.  Debtor does even not explain what this transfer was for, how it may have benefited the estate, or otherwise argue that there is a justification for this transfer.

Debtor asserts that he disclosed "all transfers" to Trustee, but disclosure is relevant only to compliance with paragraph three, not paragraph four.  Debtor's compliance with paragraph three does not excuse his noncompliance with paragraph four.  Margaret Wong falls into the category of "relative, associate, affiliate or third party."  Alpha transferred $15,000 to her.  This transfer violated paragraph four.  Debtor provides no argument or reason for the Court to find otherwise.  Accordingly, there is "cause" to convert the case under § 1112(b)(4)(E).

## II.  Failure to File a Plan and Disclosure Statement

Super Wings also argues that there is "cause" to convert because Debtor has failed "to file a disclosure statement, or to file or confirm a plan, within the time fixed . . . by order of the court."  § 1112(b)(4)(J).  Super Wings notes that the mediated stipulation provides: "Debtor shall prepare and file as soon as practicable a Fourth Amended Plan and Disclosure Statement."  Super Wings notes that parties entered into this stipulation in June 2016, and it was approved by and became an Order of the Court almost two years ago.  Super Wings argues that Debtor has

failed to file a plan "as soon as practicable," because a plan certainly could and should have been filed at some point during this 20-plus month period.

Debtor argues that he is ready to file a plan within a timeframe established by the Court if that would bring comfort to the parties. Debtor argues that Super Wings has made clear that it will not consent to any plan and disclosure statement which has hindered Debtor's ability to file a plan. Debtor argues that conversion is not appropriate because he would be able to file a plan within a timeframe established by the Court.

The Court finds that Debtor has not filed a disclosure statement or plan "within the time fixed . . . by order of the court." § 1112(b)(4)(J). Debtor provided no reasonable explanation why it has not been practicable to file a plan as the mediated stipulation required. The mediated stipulation's requirement does not require Debtor to file a consensual plan. It requires only that Debtor file a plan "as soon as practicable." Debtor has not done so for almost two years. Debtor gave no real answer, let alone a good reason, why the filing of plan was not practicable earlier. Debtor simply reiterated that he was now ready to file a plan if ordered by the Court. That is simply not enough to overcome his failure to file a plan and disclosure statement as soon as practicable. Debtor's failure to do so is "cause" under § 1112(b)(4)(J).

### III. Other Factors and Equitable Considerations

The Court has "wide discretion in determining whether there is cause to convert this case." In re Keener, Bankr. No. 14-1169, 2017 WL 5054313, at *6 (Bankr. N.D. Iowa Nov. 2, 2017). In exercising this discretion, the Court "may consider other factors and equitable considerations in making the decision on conversion." Id. (quoting In re Keeley & Grabanski Land P'ship, 460 B.R. at 536). Super Wings argues that Debtor's text messages to Dora Yip are further evidence under this broad category that support a finding of "cause" to convert this case. In particular, Super Wings argues that these text messages show that Debtor will simply take whatever actions he believes will most benefit himself, without any regard for the provisions of Chapter 11. Super Wings appeals to this evidence in addition to the whole record in this long, drawn-out bankruptcy as an independent and additional reason for conversion.

Debtor did not address these text messages in his filings or in his argument at the hearing. Debtor provides no argument about the context for these messages, why he sent them, or what they mean. Debtor also did not address the numerous concerns this Court has raised about Debtor's candor and method of operation throughout the case.

The Court finds that the text messages alone weigh strongly in favor of a finding of "cause" here. Debtor's messages to Ms. Yip propose firing his attorney,

17

bypassing the case Trustee, avoiding administrative expenses including paying attorney fees already incurred, and simply paying Super Wings directly. Debtor acknowledges a main reason for doing all this is not only to save himself money, but also to avoid a tax audit the Trustee is actively seeking. Debtor also notes that he fired his previous lawyer and that he likewise could fire his current lawyer. These text messages are extremely troubling. They show again that this Debtor lacks respect for the law and requirements governing Chapter 11. These messages weigh strongly in favor of finding "cause" to convert the case.

In addition, Trustee's statements about Debtor's noncompliance with and delay of her efforts provide additional "cause" to convert. Debtor has not complied with Trustee's efforts to follow the liquidation sequence set out in the mediated stipulation. The Court has recently entered an order compelling Debtor to remove himself and his family from a property so Trustee can sell one of the sequences properties. This is another example of Debtor not complying with Trustee until the Court orders him to do so. Debtor's continued noncompliance with the Chapter 11 Trustee is "cause" to convert the case to Chapter 7.

Finally, the full history of this case, in particular the Court's Ruling on Super Wings' previous motion to convert, shows "cause" to convert this case. In its ruling on Super Wings' previous motion to convert, the Court noted that it "remains very skeptical of Debtor's testimony and approach to payment of his

debts in this case." Id. at *7.  The Court then noted that, even though it was denying Super Wings' motion, Super Wings would be free to file a motion to convert again in the future.  The Court based this reasoning on Debtor's inconsistent finances, dubious testimony, and lack of cooperation with Trustee throughout the case.  The Court noted:  "This is functionally Debtor's last chance to proceed in Chapter 11."  Id.  Debtor has now had his last chance.  His violation of the Court's Order, failure to file a plan, noncompliance with Trustee, and text messages to Dora Yip have tipped the scales in favor of cause to convert the case.  No creditors have opposed Super Wings motion.  Neither has the United States Trustee.  Debtor has not shown 'unusual circumstances' that conversion is not in creditors' best interest.  As a result, the Court must convert the case.

## CONCLUSION

**WHEREFORE**, Super Wings' Motion to Convert is GRANTED.

**FURTHER**, this case is converted to Chapter 7.

Dated and Entered:  April 10, 2018

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE